DAVID M. COOPER ET AL. v. THE CITY OF DETROIT, THE DETROIT BOARD OF PUBLIC WORKS ET AL.

*Municipal corporations—Vacation of streets—Use of streets for market by the city—Rights of adjacent owners barred by statute of limitations.*

History of the central market place of Detroit reviewed.

*It seems* that the rights of the public in city streets may be extinguished by legislation.

The general highway laws of Michigan provide for vacating as well as laying out ways, and for vacating public highways by nonuser as well as by direct proceedings.

Where any part of a highway has been extinguished and turned to other uses, it cannot be renewed without the same methods of dedication or user which would turn other lands into public ways.

Where a highway is vacated conditionally, it is not re-established by the suspension of the conditional occupation.

Where a city charter does not require the purpose of vacating a highway to be expressed, nor make the expression of it obligatory on the subsequent occupation, the expression of a specific purpose in the proceedings to vacate it, is surplusage.

The occupation of land by a city for market purposes is not a public easement, but a proprietary occupation, and private adverse rights will be barred by the same lapse of time as if the occupation was by a private person.

Where the right of a city to certain property has been established by the statute of limitations, specific allegations that its use for

a specified purpose that is not unlawful will have a bad effect on neighboring property, can have no bearing on a proceeding to enjoin its use therefor.

An injunction does not lie where the complaint is not that a new grievance is created, but that an old one is not stopped.

Appeal from Wayne. Submitted January 16. Decided January 23.

INJUNCTION. Dismissed. Complainants appeal.

*James W. Romeyn* and *Theodore Romeyn* for complainants, cited as to the powers vested in the Governor and Judges to lay out a plan of Detroit, 2 U. S. Stat. at Large, 398, 438; 1 Terr. Laws, 283–9; *Ready v. Kearsley*, 14 Mich., 222; *Riggs v. Board of Education*, 27 Mich., 267; *Cincinnati v. Cameron*, 33 Ohio St., 366; Amer. State Papers, 5 Pub. Lands, 452; 6 id., 270-7; as to the allotment and platting of the city and sale of lots according to the original plan, *People v. Carpenter*, 1 Mich., 273; *People v. Jones*, 6 Mich., 176; *Hinchman v. Detroit*, 9 Mich., 103; *Board of Education v. Detroit*, 30 Mich., 505; *Park Commissioners v. Common Council*, 28 Mich., 228; as to rights of persons in connection with the streets of Detroit, *Cooper v. Alden*, Har. Ch., 72, 85, n c; *Devaux v. Detroit*, id., 98; *People v. Jackson*, 7 Mich., 432: 9 Mich., 111, 124, 127; *Tillman v. People*, 12 Mich., 401; *Detroit v. Blackeby*, 21 Mich., 84; *Paul v. Detroit*, 32 Mich., 108; public markets erected in the street are nuisances, Dillon's Mun. Corp., §§ 509, 316, 531; public squares are different from highways, *Baker v. Johnston*, 21 Mich., 319; as to the power of the Common Council in regard to streets and markets, L. 1827, pp. 570, 578, 582; Rev. Charter 1836, p. 25; Rev. Charter 1855, pp. 20–29; L. 1857, pp. 100, 104; Rev. Charter 1867, p. 60, § 26; p. 66, § 47; amendments of 1871, p. 55; and of vacating a highway, L. 1827, p. 578; L. 1832; Rev. Charter of 1836, p. 25; L. 1846, p. 20, § 5; the Legislature cannot authorize a common council to place a market in a street without compensating adjacent owners, *Davis v.*

*Mayor*, 14 N. Y., 517; a deed bounding the property conveyed by a public road is designed to give title to the middle of the road, *Purkiss v. Benson*, 28 Mich., 538; *Bissell v. N. Y. Cent. R. R.*, 23 N. Y., 61; *Sherman v. McKeon*, 38 N. Y., 267; *Norris v. Hill*, 1 Mich., 202; see *Fearing v. Irwin*, 4 Daly, 385; *Miner v. Mayor*, 37 N. Y. Sup'r Ct., 171; *Banks v. Ogden*, 2 Wal., 68; *Hammond v. McLachlan*, 1 Sandf. Sup'r Ct., 344; *Perrin v. N. Y. Cent. R. R.*, 36 N. Y., 120; *Wallace v. Fee*, 50 N. Y., 694; *Adams v. Saratoga R. R.*, 11 Barb., 452; *White's Bank of Buffalo v. Nichols*, 64 N. Y., 70; equity can compel the abatement of a nuisance, *Robinson v. Baugh*, 31 Mich., 290; the sale of lots according to the recorded plan of the city entitles buyers of lots to have the street by which they are bounded to be kept up as a highway, *Stack v. St. Louis*, 85 Ill., 377: 28 Amer., 621; lapse of time is no defense to an encroachment on a public right, Dillon Mun. Corp., §§ 528-533; as to title by adverse possession in favor of city, Tyler on Ejectment, pp. 883-9; *Watson v. N. Y. Cent. R. R.*, 6 Abb. Pr. (N. S.), 91; *Bedell v. Shaw*, 59 N. Y., 46.

City Counselor *F. A. Baker* for defendants. The fee to the streets of Detroit was vested in the city or in its council as a land board, provided lots were not so conveyed as to carry the title to the middle of the streets, 5 U. S. Stat. at Large, 541; they were not so conveyed, *Grand Rapids & Ind. R. R. v. Heisel*, 38 Mich., 62; the statute of limitations runs against the State (Rev. Stat. 1846, p. 600; Comp. L., § 7147; *Wayne County v. Miller*, 31 Mich., 447) and adjacent owners, *Mills v. Hall*, 9 Wend., 315; complainants in this case are too late to be entitled to equitable relief, *Campau v. Van Dyke*, 15 Mich., 377; *Attorney General v. Railroad Company*, 24 N. J. Eq., 49; *Archbold v. Scully*, 9 H. L. Cas., 388; equity will not restrain an erection that may or may not prove to be a nuisance, *Dunning v. Aurora*, 40 Ill., 481; *Butler v. Rogers*, 9 N. J. Eq., 487; *Phœnix v. Com'rs*, 1 Abb. N.

Y., 466; *Kirkman v. Handy*, 11 Humph., 406; *Rhodes v. Dunbar*, 57 Penn. St., 274; *Irwin v. Dixion*, 9 How., 10; the effect of a certain use of property upon the value of neighboring property cannot alone warrant equitable interference, *Barnes v. Hathorn*, 54 Me., 124; a city that has used property for market purposes for 46 years has gained a prescriptive right to continue to do so, *Dana v. Valentine*, 5 Met., 8; Wood on Nuisances, 717–746; what the State authorizes it cannot prosecute as a nuisance, *Chope v. Det. & Howell P. R. Co.*, 37 Mich., 195.

CAMPBELL, J. The bill in this case is filed to enjoin the city of Detroit from building a market building and continuing similar buildings on a strip of land in the center of what was once, as laid down on the Governor and Judges' plan of Detroit, an avenue 200 feet wide, known as Michigan avenue.

The facts, so far as material, are that in 1807 the plan of that part of Detroit including these premises, was laid out, and lots sold upon this street at various periods thereafter, which are now owned by complainants.

In 1834 the principal public market, which had up to that time been situated in the middle of Woodward avenue fronting on the south side of Jefferson avenue, was superseded by a brick building 50 feet in width fronting on the military square and covering the premises now in dispute for a distance not far from 80 feet in depth. The land now in dispute runs to Randolph street 50 feet in width except as crossed by Bates street. This brick building was used as a city hall and market, and was torn down in 1872, after the new city hall was built. In 1848 it was found desirable to extend the market buildings, and a question having arisen concerning the rights of the city in the lands, steps were taken to vacate the entire strip in question, which appear to have been regular in all respects. Subsequently various buildings were put up, mostly of a less substantial char-

acter, covering the whole space. The purpose of the vacating was expressed to be for market purposes.

In 1838 the city undertook to lease the premises back of the city hall for railroad purposes to the State internal improvement commissioners. The adjacent lot-owners obtained a preliminary injunction which on a motion to dissolve for want of equity was ordered to stand; and the case is not shown to have proceeded to a final hearing.

In 1873 a proposition to lease by the city the lands just vacated by destroying the city hall and some adjoining land was stayed by a preliminary injunction and never proceeded further. Some other similar proceedings seem to have been dealt with in the same way.

In 1875 the Legislature empowered the city to borrow money to build a central market, and in 1879 a contract was let and the building commenced, which is the subject of the present controversy.

The parties have presented a great many questions very ably and fully. Many of them, in our opinion, are not necessary to the disposition of this case.

It is unquestionable that the lot owners on these streets have valuable rights, and it is not unlikely, in view of other legislation and the peculiar origin of the titles, that they have rights subordinate to the public easement within the street lines. That question, however, is not a vital one here, and need not be considered.

It is not maintainable, as we have frequently decided, that the rights of the public in city streets are any more sacred than elsewhere, or that they cannot be extinguished by legislative authority. In *Devaux v. Detroit*, Har. Ch., 98, and *People v. Jones*, 6 Mich., 176, this was recognized. In *People v. Supervisors of Ingham*, 20 Mich., 95, the power of supervisors under legislative enactment to discontinue state roads was asserted as unquestionable.

The city of Detroit has had granted to it at various

times both general and special authority over these streets. In 1827 (Laws, 182; 2 Terr. Laws, 344) it was given plenary power to entirely remodel that part of the plan in which these premises are situated, and change its whole arrangement, and compel lot-owners to accept money or land compensation as they might elect. The laws in force in 1848 are admitted to have authorized such proceedings as were had, and a succession of charter provisions to that effect existed beyond the special one already referred to. 2 Terr. Laws, 224, 344, 345.

Our general highway laws have provided always for vacating, as well as laying out ways, and for the vacation of public highways by non-user as well as by direct proceedings. We have found no authority, and we think none can be sustained on principle, which holds that when a highway or any part of one has been actually extinguished and turned to other uses, there is any way of renewing it without the same methods of dedication or user which would turn any other lands into public ways. See *Tillman v. People*, 12 Mich., 405; *Field v. Village of Manchester*, 32 Mich., 279; *County of Wayne v. Miller*, 31 Mich., 447.

It is now 45 years since most of the land covered by the new building has been used for highway purposes, and 31 years since the whole strip was taken into the possession of the city under claim of right. Even if the act of vacating could be regarded as conditional, the land would not become a highway again by the suspension of the conditional occupation, whatever else might be the result. But we find nothing in the old city charter which requires the purpose of vacating the highway to be expressed, or which would make the expression of any such purpose obligatory on the subsequent occupation. It was for this particular purpose at least merely a piece of surplusage. See *Hinchman v. Detroit*, 9 Mich., 103.

Occupation of land for such purposes as this land was desired for or applied to, is in no sense an easement.

It is a proprietary occupation as much as if a private owner and not the city had so occupied it. See *Horn v. People*, 26 Mich., 223. And private adverse rights will be barred by the same lapse of time. *Ib.*

Whether the vacated lands strictly belonged to the city or the bordering proprietors, the city in 1848, if not earlier, asserted a title which was proprietary, and which covered the whole premises vacated. There has been no break in the full possession of this land; and no cessation of claim of possession of any of it. All persons interested knew that the city proposed to use it in the first place, and that it proceeded to enforce that user. Whether they were or were not estopped by their acquiescence in the proceedings of 1848 when taken, the statute of limitations long since made the city title impregnable. A peaceable and notorious possession for more than 30 years cannot now be disturbed.

The special allegations concerning the bad effect of the market on neighboring property can have no bearing on this case. It is one of those consequences which if true is a misfortune of locality. But even if pertinent, which it is not, the mischief really complained of is not that a new grievance is created, but that an old one is not stopped. That furnishes no ground of complaint.

We see no grounds on which equitable relief can be asked. The court below dismissed the bill, and we think it committed no error in doing so.

The decree must be affirmed with costs.

The other Justices concurred.