PHELPS *v.* STOTT REALTY CO.

1. MUNICIPAL CORPORATIONS — HIGHWAYS AND STREETS — DETROIT CHARTER—POWER TO VACATE ALLEYS.

> Under article 8, § 28, State Constitution, and chapter 7, § 33, of the charter of the city of Detroit, the common council of said city had the power to vacate and abolish public alleys.[1]

2. SAME—RIGHT OF DETROIT TO ABOLISH ALLEYS NOT LIMITED BY FEDERAL GRANT OR STATUTES.

> Under United States Statutes at Large, Liber 6, p. 346, granting to the city of Detroit certain land formerly part of the Federal military reserve in said city, there are no qualifications or limitations upon the right or power of said city to vacate and abolish alleys, nor is there any qualification or limitation upon such right in the acts of congress respecting the laying out of the town of Detroit and the plan thereof adopted by the governor and judges.[2]

3. SAME—FRAUD OR ABUSE OF DISCRETION NECESSARY TO REVIEW VACATION OF ALLEY.

> Fraud or clear abuse of discretion is necessary to a review of the action of the common council in vacating a public alley.[3]

4. SAME—THAT PETITIONER BENEFITED BY VACATION OF ALLEY DOES NOT SHOW FRAUD OR ABUSE OF DISCRETION.

> The fact that the vacation of a public alley was for the benefit of the petitioner does not show such fraud or abuse of discretion as to authorize a court of equity to interfere.[4]

5. SAME—VACATION OF ALLEY—RIGHT OF LOT OWNER TO OBJECT.

> A lot owner's right to object to the vacation of a part of a public alley depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation; that he may be inconvenienced or that he may have to go a more roundabout way to reach certain

---

[1]Municipal Corporations, 28 Cyc. pp. 948, 949; [2]Id., 28 Cyc. p. 840; [3]Id., 28 Cyc. p. 840; [4]Id., 28 Cyc. p. 949.

Right of property owner whose access from one direction is shut off or interfered with by closing of adjoining street, or portion of street on which he is situate, see notes in 2 L. R. A. (N. S.) 269; 30 L. R. A. (N. S.) 637; 52 L. R. A. (N. S.) 889.

points does not bring to him any injury different in kind from the general public, but only in degree.[6]

Appeal from Wayne; Miller (Guy A.), J.    Submitted October 15, 1925.    (Docket No. 83.)    Decided January 28, 1926.

Bill by Ralph Phelps and others against the Stott Realty Company and the city of Detroit to set aside proceedings for the vacating of an alley.    From a decree dismissing the bill, plaintiffs appeal.    Affirmed.

*A. F. Freeman (Yerkes, Simons & Goddard,* of counsel), for plaintiffs.

*Robert M. Brownson,* for defendant Stott Realty Co.

CLARK, J.    The bill was filed to restore to public use an alley which had been vacated by defendant city and occupied in part by a building of the defendant Stott Realty Company.    The bill was dismissed. Plaintiffs have appealed.    The accompanying drawing will show the place in question.

In 1911, David Stott (Stott Realty Company being now successor in title) owned the easterly 18 feet of lot 4, and lot 5 on Michigan avenue and he owned lot 2, south of lot 5, on Wayne street.    It will be seen that an alley separated his lots 5 and 2.    Plaintiffs Ralph Phelps and John Adams then owned, and now own, severally, part of lot 1, lot 2, and half of lot 3, westerly of said lot 5, fronting on Michigan avenue and abutting on the 20-foot alley in the rear.    Richard W. Allen then owned a part of lot 4 similarly located. He is now deceased.    The estate is represented by Mark W. Allen, executor and son, as a plaintiff.    Mr. Stott proposed to build on his property.    He wanted to have vacated the portion of the alley lying between

[6]Municipal Corporations, 28 Cyc. p. 1073.

his lots. He petitioned the council of the city to vacate, stating in his petition:

"Your petitioner represents to your honorable body that he is planning to erect on his said properties a

building to cost not less than $150,000, provided he can have that portion of the alley lying in the rear of his Michigan avenue properties and between that and his Wayne street property vacated, and he therefore petitions your honorable body to vacate that portion of said alley which lies, as shown by the plat hereto attached, between his said properties."

Messrs. Phelps, Adams, and the two Allens consented in writing to the council on the following conditions:

"1st. That the said David Stott will take care of any and all alterations necessary to the sewer and water now laid in the said alley between Wayne street and Cass street and will take care of and pay the expense of all such alterations made in such manner as to give adequate facilities to the property owned by us.

"2d. That the said David Stott begin the erection of a building upon the said property within a period of one year from the time of the approving of his said petition by the common council which said building is to cost not less than $150,000.

"It is expressly understood and agreed, as a condition hereto, that, in the event of the failure of the said David Stott to erect the building heretofore mentioned or the failure or refusal of the said David Stott to make and pay for all necessary alterations in the water and sewer service, as determined by the city engineer and the water board of the city of Detroit, then this consent shall be of no effect."

It will be noted that the lots owned by plaintiffs do not abut upon or come in actual contact with the portion of the alley sought to be vacated, that the petition did not relate to the westerly part nor to the southerly branch of the alley which lay within the block. On June 13, 1911, the council adopted a resolution vacating the said portion of the alley on conditions relating to sewer construction, paving and the putting up of a building within one year to cost not less than $150,000. The Stott Realty Company

was organized, Mr. Stott becoming president. On January 28, 1913, Mr. Stott petitioned for extension of time for one year within which to build. On February 4, 1913, time was extended to June 13, 1913. On June 3, 1913, the following resolution was adopted by the council:

"Resolved that if David Stott, or his assigns shall have expended $150,000 by September 1, 1914, in the erection of the building mentioned in resolution of this body on February 4, 1913 (J. C. C. p. 102), it shall be considered a full compliance therewith and the alley or such part thereof as is therein described shall stand vacated thereupon, otherwise not."

Mr. Stott died. A ten-story, full basement building known as the Weil building was erected by the defendant company during 1914 on the easterly 18 feet of lot 4, the larger portion of lot 5, and upon a triangular portion of the alley. A corner of the building extends about 13 feet into the 20-foot alley so vacated. Outline of the building is shown on the map. It is of concrete, terra cotta, and steel construction, costing $264,761.51, has nearly 110,000 square feet of floor, was leased to Weil & Company for a term of 15 years, and was turned over to the lessee on April 9, 1915.

On November 17, 1917, the council adopted the following resolution:

"*Whereas*, by previous action of the common council, all that part of the public alley, twenty (20) feet wide, lying first south of and parallel to Michigan avenue, and west of Wayne street, and east of the easterly line of the alley lying first west of and parallel to Wayne street, has been vacated, subject to the performance of certain conditions by David Stott, or his assigns, one of which was the expenditure of the sum of $150,000 by September 1, 1914, in the erection of the building mentioned in a resolution of this body passed on February 4, 1913, and,

"*Whereas*, the said sum has been expended in the

erection of the said building, the said building being now fully completed and all other conditions imposed by this body relative to the vacating of the said public alley have been fully performed on the part of the said David Stott and his assigns.

"*Now, Therefore,* it is hereby resolved, that that part of the said public alley, hereinbefore described be, and the same hereby is finally vacated."

And we quote from brief of counsel:

"Plaintiffs Phelps, Allen, and Adams knew in 1914 of the erection of the Weil building and the kind of a building it was, yet took no steps or proceedings to redress their alleged grievances until the filing of the bill of complaint in the cause on October 6, 1922, seven years and six months after the completion of the Weil building and the commencement of the occupancy of such building by the lessee."

The land in question was formerly part of the Federal military reserve in the town of Detroit. It was granted by congress in 1826 to the "mayor, recorder, aldermen and freemen of the city for use of said freemen." U. S. Statutes at Large, Liber 6, p. 346. The grant contains no restrictions or reservations here important. The municipal authorities subdivided and platted the land granted and sold it out into private ownership. All the parties trace title to this grant.

At the time here in question the city had the right to the reasonable control of its streets, alleys and public places (State Const., art. 8, § 28), and by its then charter (chap. 7, § 33) the common council had, among other powers, the power to vacate and abolish alleys.

The contention that this right and this power are qualified or limited by the terms of the congressional grant is wholly without merit and requires no citation of authority.

A further contention that such right and such power are limited or qualified by the acts of congress respecting the laying out of the town of Detroit and the plan

thereof adopted by the governor and judges is equally without merit.    This matter, now chiefly of historical interest, has been discussed at great length by this court.    Further discussion would be idle.    See *People* v. *Jones*, 6 Mich. 176; *Riggs* v. *Board of Education*, 27 Mich. 262; *Cooper* v. *Alden*, Harr. Ch. 72; *Jackson* v. *People*, 9 Mich. 111 (77 Am. Dec. 491); *Cicotte* v. *Anciaux*, 53 Mich. 227; *Cooper* v. *City of Detroit*, 42 Mich. 584; *People* v. *Carpenter*, 1 Mich. 273.

Fraud or clear abuse of discretion is necessary to a review of the action of the common council in vacating the alley.    It was said in *Tomazewski* v. *Palmer Bee Co.*, 223 Mich. 565:

"Whether such streets and alleys should be vacated or kept open was wholly a matter of expediency, and this was a question for the council and not for the courts to decide.    *Glasgow* v. *City of St. Louis*, 107 Mo. 198 (17 S. W. 743).    In the absence of clear abuse of discretion or fraud the courts may not review the action of the council determining the necessity of vacating streets."

Fraud is neither alleged nor shown.    But we quote again from the case last cited as to the claim that the vacation was for the advantage of a private corporation and in that respect was fraudulent, and *ultra vires:*

"As a result of the vacation, the land in the streets and alleys discontinued reverts to defendant company by operation of law, and plaintiffs complain of this, insisting that the vacation was for the advantage of a private corporation and the act of the council was therefore *ultra vires.*

"In *Ponischil* v. *Hoquiam Sash & Door Co.*, 41 Wash. 303 (83 Pac. 316), it was held (quoting from the syllabus):

" 'The fact that the vacation of a street is for the benefit of the petitioner does not show such fraud or abuse of discretion as to authorize a court of equity to interfere.'

"In that case the vacation was to enable a private corporation to use the vacated portion of the street for a large manufacturing plant."

And, recalling that plaintiffs' property does not abut upon or come in actual contact with the vacated portion of the alley, we quote again from the same case:

"It is a well settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation. That he may be inconvenienced or that he may have to go a more roundabout way to reach certain points does not bring to him any injury different in kind from the general public but only in degree. If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city and made so by the vacation of the street in another block, such consequence is *damnum absque injuria*. *Buhl* v. *Union Depot Co.,* 98 Mich. 596 (23 L. R. A. 392). See, also, *Baudistel* v. *Railroad Co.,* 113 Mich. 687; *Cummings Realty & Investment Co.* v. *Deere & Co.,* 208 Mo. 66 (106 S. W. 496, 14 L. R. A. [N. S.] 822); *Kinnear Manfg. Co.* v. *Beatty,* 65 Ohio St. 264 (62 N. E. 341, 87 Am. St. Rep. 600); 3 McQuillin, Municipal Corporations, § 1410; 2 Elliott, Roads & Streets (3d Ed.), § 1181. When the rule *damnum absque injuria* applies there can exist no such thing as taking private property."

Counsel rely on *Horton* v. *Williams,* 99 Mich. 423. That case was distinguished in *Schmolt* v. *Nagel,* 151 Mich. 502, a case quite like and decisive of the one at bar:

"The charter of the city of Detroit provides:

"'The common council * * * shall have power to establish, open, widen, extend, straighten, alter, vacate, and abolish highways, streets, avenues, lanes, alleys, and public grounds or spaces within said city.' Detroit Charter (1904), § 169.

"Under this provision the authority of the common counsel is not absolute. This is shown by our decision

in *Horton* v. *Williams*, 99 Mich. 423, a case upon which complainants rely.    That case is, however, clearly distinguishable from the one at bar.    There by closing a part of an alley the remainder was converted into a *cul-de-sac* and complainants practically deprived of ingress and egress to the rear of their several lots. No such result is effected by the contemplated change in the case at bar.    As a means of ingress and egress the alley as changed will furnish the same service as heretofore.    The grievance of complainants is purely fanciful, and not one to be redressed by injunction."

A like holding must be made in the case at bar.

· Other questions including estoppel are discussed. We have considered all of them, and think it neither necessary nor profitable to discuss them.    We find nothing to warrant disturbing the decree.

It is affirmed, with costs to defendants.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.