ROBERTS *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — CHANGING ALLEY — WHETHER FIRE HAZARD INCREASED WITHIN DISCRETION OF COUNCIL—APPEAL AND ERROR.

Power to determine whether a change in a city alley would increase the fire hazard is vested in the common council, and, in the absence of fraud or abuse of discretion, its decision thereon may not be reviewed.

[1]Municipal Corporations, 43 C. J. § 311; 28 Cyc. p. 839 (Anno).

2. Same—Changing and Vacating Alleys—Powers of Council—
   Constitutional Law—Detroit Charter.

   In view of article 8, § 28, of the State Constitution of
   1908, under the Detroit city charter (title 3, chap. 1, §
   12*g*), vesting in the common council power "to provide
   for the management and control of all property, includ-
   ing streets and alleys," power to change alleys is vested
   in the council rather than in the fire commission.

3. Same—Constitutional Law—Due Process—Detroit Charter
   —Changing Alley.

   Changing a straight city alley into an "L" shaped one by
   the common council, under power conferred by section 28,
   Art. 8, of the Constitution and Detroit city charter, does
   not deprive abutting property owners of any substantial
   right of which they may complain, and therefore is not
   a violation of the Fifth and Fourteenth Amendments to
   the Federal Constitution forbidding the taking of private
   property without due process of law.

4. Same—Eminent Domain—Changing Alley.

   There being no question of eminent domain involved in
   the changing or vacating of a city alley by the common
   council, failure of the council to institute condemnation
   proceedings before changing an alley is not a violation of
   sections 1, 2, Art. 13, of the State Constitution.

5. Highways and Streets—Marked Difference Between Streets
   and Alleys Relating to Rights of Public.

   There is a marked difference in this State in the rights
   of the general public in streets as compared with its
   rights in alleys; the latter being primarily for the ac-
   commodation of abutting owners.

6. Municipal Corporations—Changing Alley—Failure to Spec-
   ify Procedure in Constitution or Charter.

   Action by the city council in changing an alley is not
   void because the method of procedure is not specified in
   either the Constitution or city charter vesting such power
   in it.

7. Same—Notice—Appeal and Error.

   Where abutting owners have been present and been heard
   at every essential stage in proceedings by the city council

---

[2]Municipal Corporations, 28 Cyc. p. 839 (Anno); 22 L. R. A.
(N. S.) 530; 13 R. C. L. 70; 4 R. C. L. Supp. 797; [3]Id., 28 Cyc.
p. 839 (Anno); [4]Id., 28 Cyc. pp. 839 (Anno), 841 (Anno); [5]Alley,
2 C. J. p. 1151; Municipal Corporations, 28 Cyc. p. 833; [6]Id., 28
Cyc. p. 839 (Anno); [7]Id., 28 Cyc. p. 981.

to change an alley, they may not complain, on review, of lack of notice; notice not being requisite in the absence of some express provision of the law to the contrary.

Appeal from Wayne; Miller (Guy A.), J.   Submitted October 25, 1927.   (Docket No. 77.)   Decided December 1, 1927.   Rehearing denied February 14, 1928.

Bill by Arthur E. Roberts and another against the city of Detroit and others to enjoin the vacation of an alley.   From a decree dismissing the bill, plaintiffs appeal.   Affirmed.

*Carl B. Grawn* and *S. Homer Ferguson,* for plaintiffs.

*Charles P. O'Neil,* Corporation Counsel, and *Paul T. Dwyer* and *John H. Witherspoon,* Assistants Corporation Counsel, for defendants.

NORTH, J.   The Congregation Shaarey Zedek, an incorporated body affiliated with the United Synagogue of America, petitioned the common council of the city of Detroit to vacate the east 111 feet of an alley which extends through the block bounded on the east by Lawton avenue; on the west by Wildemere avenue; on the north by Rochester avenue, and on the south by Chicago boulevard.   This alley is 18 feet in width, runs parallel with Rochester avenue, and is distant approximately 107 feet therefrom.

The Congregation owns all the property abutting on that portion of the alley sought to be vacated.   Each of the plaintiffs herein owns a large multiple apartment building located on lots in said block abutting on this alley west of the portion sought to be vacated. They filed a bill in the circuit court of Wayne county, by which they sought to have the defendants restrained from vacating the portion of said alley above described.

The petitioner desires the proposed changes to enable it to construct a community building and temple extending across the easterly end of this block, and costing upwards of half a million dollars. In lieu of the portion of this alley sought to be vacated the Congregation proposes to dedicate from its property a parcel of land for alley purposes 20 feet in width, and extending to Rochester avenue, from a point 30 to 40 feet west of the easterly end of the alley as changed. The result would be an "L" shaped alley instead of one extending on a straight line through the block. To provide adequate turning space at the corner in this alley the Congregation also offers to dedicate additional land sufficient to accommodate fire trucks and other large vehicles. The short portion of the existing alley which would extend east of the corner is to be increased in width from 18 feet to 30 feet, thus affording space in which to turn around with ordinary vehicles in the *cul-de-sac* portion of the proposed alley. All these changes have been submitted to the city plan commission of Detroit, and after hearing the respective parties this commission reported to the common council

"That proper alley circulation will be provided in the block with the opening of a new alley, and that no person in said block will be injured by the change in the alley. * * * The city plan commission therefore recommends that the petition be granted."

The officials of the fire commission objected to the proposed changes in this alley on the ground that the fire hazard would be increased.

Hearings were had before the common council, and the plaintiffs and others opposed granting the petition of the Congregation, claiming the proposed changes would interfere with fire protection for their buildings, some of which are four-story apartments, being only semi-fire proof, and occupied by many families, the

safety of whom, it was claimed, would be jeopardized. It was also urged by those opposing the petition, that the proposed action in vacating or changing this alley would deprive them of property without due process of law.    The common council, acting as a committee of the whole, voted to vacate the portion of this alley as prayed by the petitioner; but before further or final action was taken, this bill was filed and a temporary injunction issued.    After the hearing on the merits, the temporary injunction was dissolved and the bill of complaint dismissed.    The plaintiffs have appealed.

The record presented here discloses that there is no ground for contending that the common council of Detroit, in its proposed action, was or is prompted by fraud or any dishonest motive, or that it has failed to give a hearing and due consideration to all parties concerned.    Evidently the common council, when acting as a committee of the whole, decided that no serious increase of fire hazards would result from the proposed change, and that the public welfare would be served thereby, since it would enable the Congregation Shaarey Zedek to erect a community building and temple.    The power to determine this question is clearly vested in the common council, and, having acted without fraud or abuse of discretion, its decision cannot be reviewed by this court.    *Phelps* v. *Stott Realty Co.*, 233 Mich. 486, 492.

Three other questions are presented in this case, as follows:

(1) Has the common council of Detroit, under its present charter, the power to vacate alleys?

(2) If it has this power, will these plaintiffs be deprived of property without due process of law by the proposed action of the common council?

(3) Is the provision of the Constitution of Michigan which vests the reasonable control of their streets and alleys in cities, villages, and townships (art. 8, § 28)

or the somewhat similar provision of the Detroit city charter, in violation of the Federal Constitution?

1. It is strenuously urged in behalf of the plaintiffs that the power to vacate streets and alleys in Detroit is not now possessed by the common council because the present city charter adopted in 1918 (title 3, chap. 1, § 12 $g$), vests in the common council only the power "to provide for the management and control of all property including streets and alleys;" whereas the former charter (1904) expressly vested the common council with power to "alter, vacate, and abolish" alleys. Plaintiffs' contention is that by necessary implication this amounts to a withdrawal of the power to alter, vacate, and abolish alleys. We are not in accord with this contention. The mere changing of the verbiage of the charter is of no consequence if the power thereby vested is equally broad.

In placing a construction upon the present charter, we must be mindful of the provision of the State Constitution of 1908 that "the right of all cities, villages, and townships to the reasonable control of their streets, alleys, and public places is hereby reserved to such cities, villages, and townships." Art. 8, § 28. It is a fair and reasonable inference that in drafting the city charter of 1918 there was an attempt to follow more closely the wording of the Constitution of 1908, rather than an intent to deprive the city of this power of local self-government incident to its streets and alleys. This inference is especially potent since, so far as we can ascertain from this record, no specific provision was made in the new charter for vesting this important power in any other body. This construction is also justified by the fact that the preamble to the present city charter recites that said charter was adopted in order that the people of Detroit might "secure the fullest measure of self-government conferred by the Constitution and laws of the State of

Michigan." In arriving at the foregoing conclusion, we have not overlooked plaintiffs' contention that, by the Detroit charter, the power to control its alleys, including the power to control vacating the same, is vested in the fire commission. Vacating streets and alleys can hardly be said to be germane to the duties of a fire department or a fire commission; and we find the Detroit charter is not subject to such a construction; but, on the contrary, we find this power is vested in the common council by the city charter, which provides that the common council shall have power "to provide for the management and control of all property, including streets, alleys, and other public places." Title 3, chap. 1, § 12*g*.

2. The second question for determination here is whether changing this alley in the manner proposed will deprive plaintiffs of property without due process of law. This question has been adjudicated against the contention of the plaintiffs so recently in this State that it is unnecessary to discuss it here, and a reference to some of the decisions and the authorities there cited is deemed sufficient. *Tomazewski* v. *Palmer Bee Co.*, 223 Mich. 565; *Phelps* v. *Stott Realty Co.*, 233 Mich. 486.

From a review of the above and other authorities the controlling element seems to be this: If the vacating or changing is of such a character that it deprives any abutting owner of a substantial right appurtenant to his property, resort must be had to due process of law incident to the exercise of eminent domain; but if it clearly appears that the proposed change in vacating a portion of an alley is to be brought about in such a manner that it does not deprive an owner of any substantial right appurtenant to his property, such change can be made as a matter of right by the municipality, because the control of the streets and alleys is vested in the municipality by the Con-

stitution, and, in this instance, also by the city charter. This case falls within this latter class.

. 3. In plaintiffs' amended bill of complaint, it is alleged that the provisions of the Michigan Constitution and of the Detroit charter under which the defendants assert power to act in the matter of vacating this alley are void because of being in conflict with the Fifth and Fourteenth Amendments to the Constitution of the United States. These provisions forbid taking private property without due process of. law. But if, as pointed out above, under the circumstances here involved, there is no taking of private property or rights, then, as applied to the facts and issues in this case, neither section 28 of article 8 of the Michigan Constitution, nor the Detroit charter provision can be held to be in contravention of the Federal Constitution.

And for the same reason, the charter provision is not in violation of section 1, or section 2, article 13 of the Michigan Constitution (eminent domain), as is contended in plaintiffs' brief. In a case involving similar questions, Chief Justice WIEST said:

"The question of eminent domain is not involved. By no stretch of imagination can it be said that property rights of plaintiffs are taken." *Tomazewski* v. *Palmer Bee Co.*, 223 Mich. 565, 569.

Plaintiffs have cited and rely upon *Horton* v. *Williams*, 99 Mich. 423, and *Smith* v. *McDowell*, 148 Ill. 51 (35 N. E. 141, 22 L. R. A. 393). The *Horton Case* has been distinguished by former decisions so clearly from one like the instant case that it seems unnecessary to repeat here. See *Phelps* v. *Stott Realty Co.*, 233 Mich. 486, 493. In citing the *Smith Case* in plaintiffs' brief, it is said:

"The State of Illinois has directly decided the question as to whether a statute giving the municipal corporations control of the streets and alleys within the municipality gives it the power to vacate the same or

any portion thereof, for the benefit and use of a private person."

But this decision is not an authority on the question now before this court, because it appears that, except as delegated to the municipality by the legislative enactment, the plenary power over the roads and streets of Illinois remains in the legislature; while in Michigan the Constitution has reserved to the cities, villages, and townships, all reasonable control over the streets and alleys. And, further, the *Smith Case* involves the rights of the public in streets as contradistinguished from the rights in alleys. · The marked difference in the rights of the general public in streets as compared with its rights in alleys has been plainly indicated in former Michigan decisions. *Bagley* v. *People,* 43 Mich. 355 (38 Am. Rep. 192).

It is also evident that the plaintiffs cannot successfully claim that because the method of procedure is not specified in the Constitution or in the city charter by which the municipality is to enforce its power to control or vacate, therefore the present proceedings are void. These plaintiffs have been present and have been heard at every essential stage, and they cannot now complain because of lack of notice. Moreover, in the absence of some express provision of the law to the contrary, it is not requisite that notice should be given. 3 McQuillin, Municipal Corporations, p. 3004; *Dempsey* v. *City of Burlington,* 66 Iowa, 687 (24 N. W. 508) ; *Baudistel* v. *Railroad Co.,* 113 Mich. 687.

The decree is affirmed, with costs to the defendants.

SHARPE, C. J., and BIRD, FLANNIGAN, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.