BURTON v. FREUND.

1. EMINENT DOMAIN—CONSTITUTIONAL LAW—DUE PROCESS.
   The vacation of a part of a public alley by the common council of a city without consent of property owners or giving them a hearing, which resulted in the creation of a *cul-de-sac* over 650 feet in length, rendering it practically impossible to turn around with an ordinary vehicle except by going to the extreme end, where an inadequate "turn-around" is provided, deprived abutting property owners of a valuable right and is a taking of their property without compensation and without any adjudication for the use and benefit of others in violation of the Constitution.

2. EQUITY—JURISDICTION—AMOUNT INVOLVED.
   Damage to plaintiffs' property by the illegal vacation of a

On application of power of eminent domain to streets and alleys see annotation in 22 L. R. A. (N. S.) 111.

public alley, *held*, under the record, to be in excess of $100, giving court of equity jurisdiction in a suit to set aside the vacation order.

3. VENDOR AND PURCHASER—NOTICE AS TO STATUS OF PUBLIC ALLEY —LACHES.
   A land contract conveying vendor's interest in an alley vacated by the city council was sufficient to put the vendee on inquiry as to the rights of his vendor therein, as bearing on his status as an innocent purchaser and abutting property owners' laches in delaying to start suit to test the validity of the vacation.

4. MUNICIPAL CORPORATIONS—VACATING PUBLIC ALLEY—LACHES.
   Where abutting property owners petitioned the city council to set aside an order vacating part of a public alley within a reasonable time after discovering the council's action, and, on the council's failure to act, within a reasonable time began suit for said purpose, they were not guilty of laches.

Appeal from Wayne; Tappan (Harvey), J., presiding.     Submitted June 15, 1928.     (Docket No. 50, Calendar No. 33,807.)     Decided July 24, 1928.

Bill by Clarence M. Burton and others against Hugo Freund, Alexander Z. Freeman, and others to set aside an order vacating a portion of an alley.     From a decree for plaintiffs, defendants appeal.     Affirmed.

*Munro & Powell,* for plaintiffs.

*Butzel, Levin & Winston* (*A. J. Levin,* of counsel), for defendants Freund.

*Max N. Freedman* and *Paul J. Wieselberg,* for defendant Freeman.

NORTH, J.     By this suit the plaintiffs seek to have set aside and held to be null and void certain proceedings of the common council of the city of Detroit by which they undertook to vacate the south 109.5 feet of an alley located in the block which is bounded by

Boston boulevard on the north, Woodward avenue on the east, Chicago boulevard on the south, and Second avenue on the west.   With the exception of the city of Detroit, the parties to this suit are owners of property in this block, which, as originally platted, contained a T-shaped alley 20 feet in width.   The north and south portion of this alley extended entirely through the block parallel with Woodward avenue and 200 feet westerly therefrom.   The east and west portion of the alley began at Second avenue and extended easterly along the center line of the block 600 feet, at which point it joined the north and south portion.   In 1916, upon petition of the adjacent property owner, the common council vacated that part of the north and south alley which extended northerly from the east and west portion to Boston boulevard. The defendants Hugo Freund and Hortense Freund are the owners of the property on the westerly side of the north and south portion of the alley, and William N. McLennan, Helen McLennan, and Alexander Freeman own the land on the easterly side thereof, Mr. Freeman being a contract purchaser from Mr. and Mrs. McLennan.   On petition of these adjacent property owners, in July, 1917, the common council vacated the southerly 109.5 feet of the north and south portion of this alley.   This left only the east and west alley and 58 feet of the other portion extending to the south. Incident to vacating that portion of the alley which opened on Chicago boulevard, the adjacent property owners paid the city $492.83 for improvements made in the alley and deeded to the city a strip of land 5 feet in width on each side of the south 30 feet of the remaining portion of the alley, thus providing a "turn-around" 30'x30'.   This space is located 28 feet south of the south line of the east and west alley.

The plaintiffs are the owners of valuable homes located in this block.   That of Mr. Burton fronts to the north on Boston boulevard and is located some-

what westerly of the center of the block.    The other
defendants own homes fronting on Chicago boulevard
adjacent to each other and located in the central portion
of the block.    The district in which these homes are
located is a high-class, restricted residence neighbor-
hood.    All parties concerned purchased their property
with regard to the descriptions contained in the plat
of this subdivision by which the perpetual use of the
streets and alleys shown thereon was dedicated to the
public.

The petition which led to vacating this alley seems
to have had the active support of Dr. Freund.    He
secured the written consent of some and possibly of
all the owners of property in the block with the ex-
ception of the plaintiffs herein.    But it is claimed by
the plaintiffs that the petition for vacating the south
portion of this alley was presented to and acted upon
by the common council without their knowledge or
consent.    The record discloses that Mr. Burton re-
fused to join in this petition, and that Mr. Finney was
absent from Detroit and presumably knew nothing
about the proceedings taken by the common council.
Mr. and Mrs. Hannan purchased their property in
1918 and after the action by the common council of
which complaint is here made.    It is claimed that a
consent in writing was obtained from the husband
of Mrs. Woolley who was the predecessor in title of
Mr. and Mrs. Hannan.

There are many other details involved, but further
reference to them, except as hereinafter contained,
would not be helpful.    The plaintiffs claim that vacat-
ing the southerly portion of this alley without their
consent and without notice to them or an opportunity
for a hearing was illegal and in violation of their
respective rights; and that this portion of the alley
was vacated for the sole purpose of turning the land
over to the owners of the adjoining property.    The

plaintiffs filed a petition with the common council in which they sought to have set aside the former proceedings by which the portion of the alley in question was vacated, and to have it reopened as a public way. This petition was referred to the corporation counsel, but the former action of the common council by which the alley was vacated was not rescinded. The following is contained in the report made to the city officials by the corporation counsel:

"We are of the opinion that the alley in question was illegally vacated by your predecessors in office. (Citing Michigan authorities.) * * * We are of the opinion that the vacations of the portions of the alley between Boston and Chicago boulevards did not change the private rights of persons owning lots abutting the alley to a free unobstructed use of the parts of the alley so vacated. We believe, in view of the adjudicated cases hereinbefore referred to, that the better and safer course for Mr. Burton and his neighbors who are protesting against the vacations of this alley to pursue is to file a bill in Wayne circuit court, in chancery, against the city of Detroit and the several persons living in the block—for the purpose of setting aside the resolutions of the common council vacating said alley and restoring the alley to the uses for which it was originally dedicated for the benefit of the owners of all the lots abutting on the alley."

In conformity with the recommendation of the corporation counsel, the bill of complaint herein was filed and upon hearing in the circuit court the relief sought by the plaintiffs was granted. The defendants, excepting the city of Detroit, have appealed.

The question presented is whether or not the plaintiffs as the owners of property abutting upon this alley had such rights therein as rendered it unlawful for the defendants to cause the portion thereof above indicated to be vacated in the manner herein stated. In behalf of the defendants it is urged that the city had full power to control or alter its alleys, and that the plaintiffs herein have not been damaged by the action

taken by the common council and therefore cannot be heard to complain.

We cannot agree with the contention upon which the defendants' brief is largely based, to the effect that vacating this portion of the public alley has not resulted in a damage to the plaintiffs. By closing the southerly end of this alley a *cul-de-sac* over 650 feet in length was created in which there is a right-angle turn and in which it is practically impossible to turn around with an ordinary vehicle except by going to the extreme end where a space for a "turn-around" is provided, but which space is shown by the proof to be inadequate for turning about with large vehicles. The plaintiffs' means of ingress and egress to their properties have been materially impaired. The existing *cul-de-sac* is not the equivalent of the original unobstructed opening into Chicago boulevard. The plaintiffs are clearly deprived of the enjoyment of a valuable right appurtenant to their respective properties; and as appears by the testimony they are annoyed and their homes made less desirable by the fact that such vehicles as attempt to use this alley must in doing so pass by the respective properties twice instead of once as formerly. The contention is made in the defendants' brief that in any event the damage to the plaintiffs' property is not shown to be in excess of $100, and therefore the court of equity is without jurisdiction. The record does not sustain this contention. Touching this phase of the case, the trial judge in his findings of facts said:

"Plaintiff Burton testified that his lot was damaged to the extent of $100 and upwards. The evidence warrants the conclusion that the original alley was much more valuable to plaintiffs than the present arrangement that prevents a free passage to the east and thence south to the boulevard, Woodward ave., and the downtown district."

There is no claim that any public purpose was served

by vacating the southerly portion of this alley; instead the land has been appropriated by the adjoining owners for their private use although they claim that the transformation of this public alley into a private side drive has materially added to the beauty of the locality. It should also be noted that no other adequate outlet for the traffic of this alley has been provided in lieu of the one closed. In these particulars this case is easily distinguishable from *Roberts* v. *City of Detroit,* 241 Mich. 71. It was stated in that case:

"If the vacating or changing is of such a character that it deprives any abutting owner of a substantial right appurtenant to his property, resort must be had to due process of law incident to the exercise of eminent domain; but if it clearly appears that the proposed change in vacating a portion of an alley is to be brought about in such a manner that it does not deprive an owner of any substantial right appurtenant to his property, such change can be made as a matter of right by the municipality," etc.

While we found that the *Roberts Case* fell in the latter class above indicated, it is clear that the present case does not. The city was without power to vacate the southerly end of this alley and thereby deprive these plaintiffs of the full and free enjoyment of rights appurtenant to the properties they own. As we view the case, it is the taking of the property rights of the plaintiffs without compensation and without any adjudication for the use and benefit of others, and is a clear violation of constitutional provisions. We think the case is controlled by *Horton* v. *Williams,* 99 Mich. 423, wherein the facts are somewhat similar and in which Chief Justice McGRATH said:

"Complainants have an interest in the land embraced in this alley, and the taking thereof can only be effected by a proper regard for the constitutional provision respecting the taking of private property."

In defendants' brief it is said: "It would be contrary to equity to set aside the vacation proceedings at this time." As bearing upon plaintiffs' laches, it is urged in behalf of the defendant Freeman that at the time he contracted to purchase his property (March 21, 1921), its physical condition was such that it gave him no notice of an existing public alley. He testified:

"I bought either in January or February, 1921. At the time I bought it the alley was just as it is now. The alley had been paved privately. I took one portion of it myself. * * * Nothing was said about the alley to my knowledge. I do not remember if anything was stated in the contract or not."

Later his contract was produced, and it disclosed that, immediately after the description of the original parcel, the following is inserted:

"Also all rights parties of the first part have in and to the east half of the alley lying west of and adjoining said premises, which alley was vacated by the common council of the city of Detroit by resolution dated April 18, 1918."

We think this method of referring in the contract to this portion of the property was sufficient to put the purchaser on inquiry as to the title of the vendor. If, however, Mr. Freeman is an innocent purchaser and has sustained a damage because of defective title to this portion of his property, obviously he has ample remedy against Mr. McLennan, from whom he is purchasing and who was a party to the proceedings by which it was sought to vacate the portion of the alley adjacent to his property. In any event, so far as the equities of the case are concerned, this contention of Mr. Freeman is offset by the claim of Mr. and Mrs. Hannan, who also purchased after the resolution was passed by the common council vacating the south end of this alley, but at the time of their purchase (May

1, 1918) this part of the alley was still being used. They assert that they bought their property believing it abutted on an alley which opened through to Chicago boulevard, and that they had no knowledge that a portion of it had been vacated.    None of the plaintiffs knew of the action of the common council until the city paved or was about to pave the alley in 1920. Upon discovery of what had been done and within a reasonable time thereafter the plaintiffs herein petitioned the common council to vacate and set aside their former resolution by which the alley was closed at the southerly end.    While there was necessarily some delay the matter seems to have been prosecuted with reasonable promptness, at least to the time of filing the bill of complaint herein on March 10, 1922. The record discloses neither equities in the defendants nor laches on the part of the plaintiffs which bar the latter from enforcing their property rights.    Much of the delay occurring since the filing of the bill of complaint has been caused by court proceedings incident to a cross-bill filed by the defendants, which was dismissed upon appeal to this court.    See *Hannan* v. *Freund,* 235 Mich. 126.

The city of Detroit has not appealed from the decree entered in the circuit court, and it is to be assumed it is content with the decree there entered.    We are of the opinion that the plaintiffs herein are entitled to the relief sought as against the other defendants and therefore the decree of the lower court is affirmed, with costs to the appellees.

FEAD, C. J., and FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.