## LUTHER BEECHER V. THE PEOPLE.

*Obstruction of alleys—Questions of title.*

Questions of title cannot be tried by a municipal court under city ordinances.

The municipal power to prevent the obstruction of public easements does not extend to settling the title to lands, and cannot be exerted in a summary proceeding unless an actual public user has been interrupted.

An alley is not meant primarily as a substitute for a street, but only as a local accommodation to a limited neighborhood.

The obstruction of an alley is rarely a question of law; a roof twelve or fifteen feet above it is not necessarily an obstruction, nor is anything that does not interfere with its accustomed use.

Certiorari to Recorder's Court of Detroit.    Submitted January 18.    Decided January 29.

*F. A. Baker* for plaintiff in certiorari.

City Attorney *W. C. Maybury* for defendant.    Placing a roof timber above a space in which the public has vested rights is an interference with its easement, even though it does not interfere with ordinary travel, *Rex v. Lord Grosvenor*, 2 Stark., 511; *Queen v. Betts*, 16 Q. B., 1022; *Rex v. Russell*, 6 East, 427; *Davis v. Mayor*, 14 N. Y., 524; *Grove v. Fort Wayne*, 45 Ind., 429.

CAMPBELL, C. J.    Beecher was complained of for "ob-

38 MICH.—37.

structing and encumbering" an alleged public alley in
Detroit "with certain large timbers placed above and
diagonally across said public space, at the height of fif-
teen feet or thereabouts above the ground level of said
space."

The facts found by the recorder's court show that
Beecher owns the land on either side of this space from
Woodbridge street to Detroit river, and is roofing it over
at a height of about fifteen feet. The strip of land in
question is 16 feet wide and was originally a part of the
bed of Detroit river. While in this condition of land
covered with water, it was marked in 1831 on a plat
made by the city, which then owned the tract, in the
same manner as alleys were generally marked. The
space was used by private parties as a passage for water-
logs to furnish water to the citizens, and the city pur-
chased these in 1834. In 1851 the owners of land
adjoining on the east (now owned by Beecher) leased the
end next to the river, and put in a box drain at the
expense of the city to drain Woodbridge street and a
block adjoining. The same owners, under a contract with
the city, the terms of which are not found in full, filled
up and planked this space as far as the end of their
buildings. The finding concludes as follows: "This
space was always considered and treated by the adjoin-
ing owners as belonging to the city; it was never assessed
as private property; a public sewer was built through
it about seven years since, and no objection was made
to it by the adjoining owners; when Woodbridge street
was paved, the city paid for the paving in front of this
space, as being a public alley. The river front of this
space was too narrow for large boats to land there and
unload freight, but this was occasionally done by small
sail boats and scows, and goods and baggage were con-
veyed from them over the slip without any charge." As
to the question of obstruction, the court finds: "All the
obstruction, if any, consists of two or three timbers,
extending across said space from one side to the other

about twelve or fifteen feet from the ground." Upon this Beecher was adjudged guilty of the obstruction.

The object of the power granted to the city to prevent obstructions to various easements of a public character, is not to settle the title, which cannot be tried by a municipal court under city ordinances. *Horn v. The People*, 26 Mich., 221; *Roberts v. Highway Com'rs of Cottrellville*, 25 Mich., 23.

Neither can any such interference in a summary proceeding be had except where some way actually used has been interrupted in its user or enjoyment. A theoretical easement not actually used is not within the law. *Tillman v. The People*, 12 Mich., 401; *Jackson v. People*, 9 Mich., 111.

In the present case the land could not originally have been an alley, because it was covered by open water. Its uses since, appear to have been for the passage under its surface of drains and water pipes, and as a wharf, or an appendage to a wharf. Under the facts found the use of it as an alley has been for the convenience of adjoining property, and not for any public right of way. In these respects it comes within the principles of *Horn v. People* and *Tillman v. People* above cited. It can make no difference that the city may possibly own the fee; neither can the city try as a violation of an ordinance an invasion of its private property.

The finding if otherwise correct, shows no obstruction. Assuming that alleys may under some circumstances involve public easements in the nature of ways, yet their primary purpose, even then, is not to be substitutes for streets, but to serve as means of accommodation to a limited neighborhood for chiefly local convenience. Nothing can be treated as a punishable obstruction that does not interfere with its accustomed uses. It cannot be said that covering it in by a roof is necessarily any obstruction whatever. There are many arcaded sidewalks which are a great convenience to foot passengers, and it can

seldom happen that a roof twelve or fifteen feet high can interfere seriously with any of the ordinary uses of an alley. In the present case the court did not find in fact that there was any obstruction, but decided it as a question of law,—which it is not in most cases, if at all. The case of *Regina v. Betts*, 16 Q. B., 1022, is directly in point. See also *Clark v. Lake St. Clair etc. Ice Co.,* 24 Mich., 508.

For these reasons the conviction must be quashed.

MARSTON and GRAVES, JJ., concurred. COOLEY J., did not sit in this case.