THOMAS v. SULLIVAN.

1. JUDGMENT—RES ADJUDICATA—DRAINS.
   Questions as to the legality of proceedings establishing a certain drain and fraud alleged in connection therewith, raised and decided in a former suit, may not again be litigated in the present suit.[1]

2. DRAINS—PARTIES—FRAUD—PUBLIC OFFICIALS.
   If it was desired that the court should pass upon the conduct of all officials connected with the laying out of a drain, and brand their acts as void because tainted by their fraudulent violation of official duty, they should

[1] Drains, 19 C. J. § 119; Judgments, 34 C. J. § 1154.

have been made defendants in the suit to set aside the proceedings.[2]

3. SAME—ASSESSMENTS FOR DEFICIT—MINISTERIAL DUTIES.

Where additional work not contemplated in the contract for the construction of a drain was rendered necessary by the discovery of rock in the bottom of the drain, the duties of the drain commissioner in connection therewith, including the making of further assessments to meet the deficit, under the statute (1 Comp. Laws 1915, § 4913, as amended by Act No. 16, Pub. Acts 1919), are purely ministerial and not reviewable.[3]

4. SAME—FRAUD NOT ESTABLISHED BY PROOFS.

In a suit to declare illegal and void all proceedings in connection with the laying out and construction of a drain, the allegations of fraudulent conduct on the part of public officials in connection therewith *held*, not sustained by the proofs.[4]

Appeal from Monroe; Root (Jesse H.), J.     Submitted October 8, 1924.     (Docket No. 24.)     Decided April 3, 1925.

Bill by Catherine T. Thomas and others against Daniel F. Sullivan, drain commissioner of Monroe county, to enjoin the construction of a drain.     From a decree dismissing the bill, plaintiffs appeal.     Affirmed.

*Philip A. McHugh*, for plaintiffs.

*Willis Baldwin*, for defendant.

STEERE, J.     Plaintiffs filed this bill of complaint in the circuit court of Monroe county, in chancery, on April 10, 1922, asking that defendant, Sullivan, as drain commissioner of that county be enjoined from taking any further steps in connection with the construction of the so-called Barnaby drain, located in Raisinville township, asking that all proceedings which

[2]Drains, 19 C. J. § 151; [3]Id., 19 C. J. § 268; [4]Id., 19 C. J. § 153.

had been taken in laying out and constructing it be declared illegal and void, because tainted with fraud and carried on in violation of statutory requirements, and for such other and further relief as should be found agreeable to equity and good conscience. Defendant answered in detailed denial. The case was heard in that court upon pleadings and proofs taken in open court. An opinion was filed by the court, reviewing the proceedings and previous litigation relating to construction of the drain. Plaintiffs' bill was dismissed and they have appealed.

At the time of filing said bill the Barnaby drain had been excavated its entire length and was serving the purpose for which it was constructed, but, owing to the necessity of rock work near the bottom of the drain in certain places, which had not been contemplated in the contract for its excavation, supplemental proceedings were taken by the drain commissioner for further assessment of a special tax to cover the deficiency and pay for the extra rock work.

Plaintiffs' additional assessment, which amounted to in the neighborhood of $90, is the direct issue in this suit. We, however, have presented for consideration and set out at length in this voluminous record three other lawsuits, two of which relate to the Barnaby drain and the third a divorce case between plaintiff Leonora Sullivan and defendant, Daniel Sullivan. All of those cases have gone through the mill and been carried to final adjudication. But plaintiffs' counsel contends they are material to a proper understanding of the large number of deliberate violations of the statute, carried to such an extent that it is "regretfully" asserted—

"the drain commissioner, county clerk, the members of the board of supervisors, and certain other Monroe county officials appear to have acquired the perverted notion that because they have been fortunate enough to have had at their beck and call the services

of  *  *  *  Michigan's best-posted and cleverest drain law specialist, they are at liberty to virtually trample and spit upon all the drain statutes with perfect immunity."

The impelling cause of this unfortunate situation is imputed by plaintiffs to the hostility of defendant, Sullivan, whose "evil and controlling influence" is charged to have perverted the official conduct of the special drain commissioner appointed by the probate court to conduct the condemnation proceedings and dominated both the jury called in said condemnation and the board of review.

Plaintiff Catherine Thomas, who lived in Monroe with her husband, Nathaniel Thomas, at the time of these proceedings, is the mother of Leonora Sullivan who is the divorced wife of defendant, Daniel Sullivan. Plaintiff William Sortore is the son of Catherine Thomas by a former husband named Hendrick Sortore. Catherine owns in fee 46 acres of farm land located within the Barnaby drain district and has a life interest in an adjoining 53 and a fraction acres known as the "homestead acreage." Leonora Sullivan and William Sortore each own an undivided half interest in a fee of the homestead property subject to their mother's life estate, and the drain traverses a portion of that land.

Sullivan's marriage to Leonora terminated in a bitterly contested divorce suit which found its way eventually to this court and is reported in 170 Mich. 557. The case was decided in this court in 1912 sustaining the decree of the court below granting Leonora a divorce with alimony on the ground of extreme cruelty on the part of Daniel.

The second suit made a part of the record was a bill filed by one Claude West who contracted to excavate the drain at a price of $2,700. He alleged the contract was let and taken by mutual mistake on the basis of dirt excavation, and asked for reformation

or cancellation of his contract on the ground there was a certain amount of rock work involved which was not disclosed when the contract was let. The court granted him a decree modifying the contract to completion of the dirt excavation exclusive of any rock work.

In August, 1920, plaintiffs filed a bill of complaint against Sullivan and other officials containing the same allegations of irregularity and fraud as in the instant case and asking the same sweeping relief, except as to the additional assessment for deficiency before mentioned. That suit was fully heard on pleadings and proofs taken in open court. A full and carefully considered opinion was filed by the trial court reviewing and sustaining the drainage proceedings, and on August 29, 1920, a decree was entered dismissing plaintiffs' bill, from which no appeal was perfected and the issues there decided necessarily stand as *res adjudicata.*

Following the decision of the court that certain rock work essential to completion of the drain was not included in West's contract, Sullivan let a contract for excavation of the rock, and the drain was completed. It being found that the amount first assessed for construction of the drain was not sufficient by $502 to cover all the cost and incidental expenses therefor, Sullivan took steps to make a further assessment to meet the deficit under the provisions of section 4913, 1 Comp. Laws 1915, as amended by Act No. 16, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4913), which now reads as follows:

"Section 9. Whenever the amount assessed for the construction of any drain shall not be sufficient to complete the same, and to pay all the costs and incidental expenses or to pay the principal and interest on bonds if such are issued, a further assessment shall be made to meet the deficit or additional expense. Such further assessment shall be apportioned, assessed,

levied and collected as provided in the first instance, and on the same percentage, and shall be collected in one year, but there shall be no review of nor appeal from such further assessment."

On April 10, 1922, plaintiffs filed their bill of complaint in the instant case reviewing and proposing to re-litigate the whole controversy over the Barnaby drain from the beginning in 1892 when Barnaby, whose name the ditch immortalized, started proceedings by petition for its construction which were opposed by Mrs. Thomas' first husband, Hendrick Sortore, and litigation followed which was finally adjusted by a contract between the two by which a tile cut-off was provided for through Sortore's land to drain Barnaby's property and surrounding land, it being provided that if Sortore failed to furnish a sufficient outlet—

"and the lands and premises or crops of the land now owned by said Barnaby west of and adjacent to the said premises of Sortore on claim 673, are injured because of his failure to provide an outlet for such water as may come to such tile drain, he will be liable to the said Barnaby, or owner of the premises now owned by Barnaby as aforesaid, for all damages that may result from a failure to provide an outlet for such water."

Barnaby and the elder Sortore were by no means the only parties who owned land requiring drainage in that section and during the 30 years following the proposed Barnaby drain was a fruitful subject of local contention.    Proceedings to construct it were initiated in 1917 under a petition of interested freeholders and successfully opposed by Mrs. Thomas. In the fall of 1918 another petition signed by the requisite number of interested freeholders was filed with Sullivan, as drain commissioner.    As required by statute he notified the clerk of the township through

which the proposed drain would pass and the clerk called a meeting of the township board to consider it.   Other steps required by the drain law were taken (1 Comp. Laws 1915, § 4881 *et seq.*), as to which Sullivan performed his ministerial duties as county drain commissioner until the point was reached where it became the duty of the commissioner to make the apportionment of benefits.   Considering himself disqualified from doing so owing to his divorced wife being interested he petitioned the probate court for appointment of a special drain commissioner to take his place.   The court appointed the drain commissioner of the adjoining county of Washtenaw, who qualified and made the apportionment.   This course was taken under authority of 1 Comp. Laws 1915, § 4966 *et seq.* Prior to that time the township board and a jury demanded by defendant had passed upon the question of necessity.   An appeal was taken by plaintiffs from the apportionment by the special county drain commissioner to the board of review and the board sustained his apportionment.   A contract was then let as provided by statute and the drain constructed in 1919.

Plaintiffs tenaciously contested these proceedings at every step, appealing to higher or other tribunals wherever the statute so authorized and as a last resort filed their first bill in chancery (in August, 1920) raising for review all possible questions as to the legality of the proceedings and especially fraud, which was there and is here imputed to the evil designs and controlling influence of defendant, Sullivan, upon the official conduct of the various county and township officers, boards and jury whose duties required their participation in establishing the drain.   The questions there raised and decided cannot again be litigated in this case.   Both bills asked that the entire proceedings be set aside not only because of Sullivan's

turpitude but also the fraudulent conduct of other officials subject to his evil and controlling influence. He alone is made a defendant in the instant case. If it was desired that the court should pass upon the conduct of all officials connected with the laying out of the drain and brand their acts as void because tainted by their fraudulent violation of official duty it would seem they should be made defendants also.

We discover nothing of significance alleged in the instant bill which was not heard and decided upon its merits in the first chancery suit, except Sullivan's special assessment to meet a deficit. The apportionment of benefits for the whole drain, whatever it might cost, was made by the special commissioner from Washtenaw county. Sullivan's subsequent duties in the matter were purely ministerial, including the making of further assessment to meet deficiencies. The statute already quoted provides that such assessment "shall be apportioned, assessed, levied and collected as provided in the first instance, and on the same percentage, * * * but there shall be no review of nor appeal from such further assessment." The further assessment in this case was spread on the same percentage of benefits as in the first instance.

Because of the sweeping charges of fraudulent malfeasance made against the officials, jury and others called upon to act in the drain proceedings, we have read this lengthy record with especial care to try and ascertain upon what facts those charges are based. In the first place it is to be borne in mind that these proceedings were initiated by a signed application of over half of the freeholders whose lands are traversed by the drain, filed as the law requires with the county drain commissioner. The law makes it his duty to then notify the township clerk and file a copy of the application with him. The clerk is required to then notify members and call a meeting of the township

board.   It then became the duty of the township
board to meet and determine whether the proposed
drain is necessary, and conducive to public health.   If
not amicably adjusted, the public necessity of taking
land of any objector for right of way had to be de-
termined by a special commission of three disinterested
freeholders of the county appointed by the judge of
probate.   They are required to submit their report
in writing to the court and a hearing had on applica-
tion, at which interested parties may be heard.   Right
to a jury hearing on demand is given to any interested
contestant and appeal to a board of review from the
result of that hearing.   Plaintiffs availed themselves
of all these provisions.

We find no proof of any private interest, bias or
official misconduct of any kind on the part of the
numerous participants whose duty it was to act of-
ficially in those determinations, nor any suggestion of
any suspicious circumstances as to them.   So far as
we can determine from this record the charges of
fraud against those officials is based on a reflected
suspicion of Sullivan, because his divorced wife was
opposed to the drain, or a suspicion based on a
suspicion.

The questions of Sullivan's disqualification, because
of his former wife's interest, fraud and irregularities
in the drain proceedings prior to filing the first bill
which defendant's counsel again argue at length, were
long since foreclosed by a final decree in that case.
We are not at liberty or disposed to discuss plaintiffs'
grievances because an appeal was not perfected in that
case.   There is no inherent right to an appeal.   If
the conditions precedent for appeal provided by statute
have not been complied with there is no appeal.

On the questions open for consideration we find
nothing in the record indicating that the contract for
the necessary rock work was illegally let, nor that in

the ministerial duty of letting it and making a special assessment to meet the deficiency on the same apportionment percentage as the original assessment Sullivan acted illegally or fraudulently.

The decree of the lower court will stand affirmed, with costs to defendant.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.