LEWIS C. THOMAS and WYOTT MANUFACTUR-
ING COMPANY, a Corporation,

*Plaintiffs and Appellants,*

vs.

E. M. JULTAK and BEATRICE JULTAK and CITY
OF CHEYENNE, a Municipal Corporation,

*Defendants and Respondents.*

(No. 2485; May 22, 1951; 231 Pac. (2d) 974).

For the plaintiffs and appellants the cause was submitted upon the brief and also oral argument of A. G. McClintock of Cheyenne, Wyoming.

For the defendants and respondents Jultak the cause was submitted upon the brief and also oral argument of A. Joseph Williams of Cheyenne, Wyoming.

202

## OPINION

BLUME, Justice.

This case involves the validity of a resolution of the Council of the City of Cheyenne vacating a portion of an alley in Block 404 of the City of Cheyenne. The defendants filed a demurrer to the second amended petition on the ground, among others, that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and plaintiffs not pleading further, judgment was rendered for the defendants.

The second amended petition alleges the following facts: Block 404 of the City of Cheyenne was duly platted as part of the city on September 21, 1870. It is bounded on the northerly side by Lincoln Highway, on the east by a street, on the south by the Union Pacific Railroad right-of-way, on the west by the west boundary of the City of Cheyenne. The following plat will throw light on the situation. An alley running east and west through Block 404 is shown where the plat states "Block 404" and is the alley in controversy here. It is a dead-end alley or cul-de-sac abutting on the property of the plaintiff Wyott Manufacturing Company on the west. That company owns the land immediately west of the west boundary of the city and abuts on the Lincoln Highway, and includes the unshaded portion on the map adjacent to the alley in question here. The shaded portion shows the buildings on its

property. Defendants Jultak own Lots 6 to 17 of Block 404. Plaintiff Thomas owns Lots 18 to 22. Sometime in the year 1939 Walter S. Bunting who was the then owner of the lots now owned by the defendants Jultak herein, wrongfully and illegally, as is alleged, encroached upon and obstructed the foregoing alley by adding to a house erected upon his lots a porch and stoop, which porch and stoop are located entirely in the alley thereby completely blocking the same. On or about July 28, 1941 the City of Cheyenne, through its mayor and council, but without any notice to plaintiffs or others, and without any opportunity given to them to be heard, adopted the following resolution vacating and abandoning the alley adjacent to Lots 6 to 17, both

inclusively, in other words, more than half of the western part of the alley in question here. The resolution of the city is as follows:

## RESOLUTION NO. 576

ENTITLED: "VACATING PART OF ALLEY IN BLOCK 404, CITY OF CHEYENNE, WYOMING, WITH CERTAIN RESERVATIONS."

WHEREAS, Walter S. Bunting, owner of real estate consisting of the major portion of Block 404 in the City of Cheyenne, Laramie County, Wyoming, has petitioned the Council of the City of Cheyenne, Wyoming, to abandon and vacate that portion of the alley in said Block 404 described below due to the fact that the said alley as shown on the recorded plat of said city, has never been used by the public as an alley and for alley purposes, and that the use of said alley is not necessary for the public, and it is not feasible to use the same due to the fact that said alley has a dead end at the west extremity thereof;

NOW, THEREFORE, BE IT RESOLVED by the Council of the City of Cheyenne, Laramie County, Wyoming, that all that portion of said alley in Block 404 in the City of Cheyenne, Laramie County, Wyoming, situate, lying and being between and adjacent to lots six (6) to eleven (11) inclusive, and lots twelve (12) to seventeen (17) inclusive, in said Block 404, be, and the same hereby is, declared vacated and abandoned; reserving to said City of Cheyenne right-of-way and easement for sewer, water and public utility lines and maintenance thereof; and authorizing the Mayor and City Clerk, on behalf of said City, to execute a quit claim deed accordingly.

Presented, read, adopted and passed this 28th day of July, 1949.

On July 31, 1941 the city conveyed to the successor in interest of Walter S. Bunting, the vacated portion of the alley heretofore mentioned. Plaintiffs allege that when Bunting first erected the porch and stoop above mentioned, the plaintiff Thomas protested against the obstruction. Bunting thereafter allowed the plaintiff Thomas to use a portion of his lots, now owned by the defendants Jultak as a passageway between the tracts here involved. This situation existed until 1947 when the defendants Jultak herein acquired the lots formerly owned by Bunting. They caused an investigation to be made of the practical situation and were informed through their attorney that plaintiffs were objecting to the maintenance of the porch and stoop and that the same would have to be removed; that notwithstanding such knowledge and information the defendants Jultak purchased the premises on or about November 24, 1947 and subsequently denied plaintiffs all means of communication across the same. Plaintiffs allege that the Wyott Manufacturing Company of which the plaintiff Thomas is president, is engaged in manufacturing on its premises outside the limits of the city as above mentioned, but that its property and the property owned by Thomas have for many years been used in conjunction with one another, and the easterly tract, namely that owned by Thomas, is a necessary and important adjunct of the property of the manufacturing company outside the limits of the city. It has in the past been used and can still be used as a parking area for employees of the plant. In August 1941 a storage warehouse was erected by Thomas on the lots owned by him in Block 404, and ever since has been rented to and used by the manufacturing company for the storage of materials used by the manufacturing company on its premises; that because of the growth and development of the business of the manufacturing company it is necessary and desirable to increase the

storage and warehouse facilities on the lots. of Thomas and that it is the plan of the plaintiffs to do so; that the materials stored in the warehouse are needed at the factory of the manufacturing company and it is necessary to move them by truck; that the alley here in question constitutes the most convenient and least dangerous route between the two tracts both for the movement of trucks and of people. The Lincoln Highway bounding the block in question on the northerly side is a more circuitous route. The highway is hazardous and dangerous because it is one of the principle transcontinental highways from east to west carrying a very large stream of traffic which, at the points in question, is proceeding at a high rate of speed; that the highway carries a great many large trucks traveling at good speeds. Plaintiffs have a lease to use the right-of-way of the Union Pacific Railroad Company but that lease may be cancelled at any time at the end of any year, so that this passageway cannot be relied upon by the plaintiffs in order to transport what is necessary to be transported between the lots of Thomas in Block 404 and the manufacturing company outside of the limits of the city. Plaintiffs allege further:

"12. Plaintiffs claim, contend and assert that the action of the said City of Cheyenne in purporting to vacate and abandon the said alley was and is wholly null and void and no force and effect against the public generally or these Plaintiffs specially for the reason that no power exists in said City under its charter or the applicable statutes of the State of Wyoming so to vacate the said alley *for the sole benefit of the said Walter S. Bunting and his successors in interest.* Plaintiffs are informed and believe and therefore allege on such information and belief that the Defendants contend that the purported vacation and abandonment as

aforesaid was in all respects valid and legal and within the authorized powers of said City.

"13. Plaintiffs further claim, contend and assert that if the City did have power to vacate said alley for the sole benefit of said Bunting or if the street were in fact vacated in the public benefit, which Plaintiffs do not admit, then said action of the City was and is wholly null and void and of no force and effect against these Plaintiffs because no notice of such vacation or opportunity to appear was given to Plaintiffs or either of them as is required under the said charter and the applicable statutes of Wyoming and Plaintiffs have been deprived of their property rights in the continued existence of said alley without due process of law in contravention of the constitution of the State of Wyoming and the United States. Plaintiffs are informed and believe and therefore allege on such information and belief that the Defendants contend that no notice to or opportunity to appear by Plaintiffs or any others was required.

"14. Plaintiffs further claim, contend and assert that the said deeds above referred to insofar as they purported to convey any title to said alley or any part thereof were and are null and void and of no force and effect against the public generally and these Plaintiffs specially for the reason that the said City was without power under its charter or the applicable statutes of the State of Wyoming to vest in any individual the fee title to said alley, the same having been irrevocably dedicated to the general public. Plaintiffs are informed and believe and therefore allege on such information and belief that the Defendants contend that upon the vacation and abandonment of said alley as aforesaid and which they claim to have been a legal and valid vacation, title to that portion of the alley so vacated vested in the City which could convey it in any way it

saw fit." Plaintiffs accordingly prayed for a declaration for their rights and that the defendants Jultak be enjoined from keeping and maintaining any obstruction in and across the alley here in question and should be compelled to remove any obstruction now existing therein.

It may be here noted incidentally that there is no allegation in the petition that the alley in question was ever used as such by the public. No brief was filed in this court on behalf of the City of Cheyenne, and reference made to defendants hereafter will refer only to the Jultaks.

## 1. PROCEDURE.

It is contended by counsel for the plaintiffs that the city was without jurisdiction to vacate part of the alley in question here because of the fact that it did not follow the provisions of the statute applicable in such a case. He contends that the applicable statute is Section 29-1104 reading as follows: "Streets and alleys so platted and laid out, or which have been platted or laid out under any prior law of this state regulating private plats, may be altered or vacated in the manner provided by law for the alteration or discontinuance of highways." That section is part of Article 11, Chapter 29 which seems to be an almost verbatim copy of the revised code of Iowa (1882), Section 559 and subsequent sections. The only provision as pointed out relating to the vacation of highways are Section 48-307 and subsequent sections which provide for the vacation of county highways by the Board of County Commissioners. Counsel for the defendants contends that the applicable statute herein is Section 29-2004 which relates to all cities and towns in the state and provides as follows: "Said council of any such city or town is hereby authorized and empowered to lay out, establish (,) vacate,

widen, extend and open streets or parts thereof, and appropriate private property for the purpose, and to establish or alter the grade of any street, within the city or town limits, and it shall have full power to determine and provide everything necessary and convenient to the exercise of the authority herein granted." The Iowa statutes above mentioned, namely Section 464 had a similar provision reading in part as follows: "They (cities and towns) shall have power to lay off, open, widen, straighten, narrow, vacate, extend, establish and light streets, alleys, public grounds, wharves, landing, and market places, and to provide for the condemnation of such real estate as may be necessary for such purposes." The statute also made provision that towns and cities might carry out the powers granted, which provision is also contained in Section 29-2004 above quoted. In the case of Dempsey vs. City of Burlington, 66 Ia. 687, 24 N.W. 508, the court had under consideration these various provisions in the Iowa Statutes which, as stated before, are almost the same as the provisions in this state. The court held that the provision for vacation under the provision for dedication, namely the section corresponding to Section 29-1104, has no application to municipalities but that the powers to be exercised by the city in vacating a street should be exercised under the provisions similar to those in Section 29-2004 of our own statutes. We have no reason to disagree with the Iowa court, except to say that after all, Section 29-1104, supra, does not make it compulsory to vacate a highway in a manner provided by that section. It is permissive only, and we do not feel warranted in striking out the term "vacate" which is contained in Section 29-2004 above quoted.

The last mentioned section does not provide for any notice to be given to property holders when it is proposed to vacate any street or alley. The vacation of

public streets and highways is essentially a legislative function. It is therefore a plenary and absolute power, subject only to constitutional limitations, and it may be delegated to the state's municipal divisions. Con Realty Co. vs. Ellenstein, 125 N. J. L. 196, 14 Atl. 2d 544, Elliott on Roads and Streets, (4th Ed.) Section 1182. We think, accordingly, that so far as jurisdiction is concerned no notice needs to be given to a property holder. 4 McQuillin on Municipal Corporations (Rev. Ed.) page 368, 39 C. J. S. 1055, Dempsey vs. City of Burlington, 66 Ia. 687, 24 N.W. 508, Roberts vs. City of Detroit, 241 Mich. 71, 216 N.W. 410, 412, Village of Bellevue vs. Bellevue Improvement Co., 65 Neb. 52, 90 N.W. 1002, Baudistel vs. Michigan Central R. Co., 113 Mich. 687, 71 N.W. 1114. In Borough of Verona vs. Board of Chosen Freeholders, 88 N. J. L. 55, 95 Atl. 730, affirmed in 89 N. J. L. 373, 98 Atl. 1084, the court in speaking of notice of vacation of a street stated: "It is said, however, that it was not authorized to do so without notice to the prosecutors. This depends upon whether the action of the freeholders in vacating the gores and angles was judicial in character. We think it was not. In Moore v. Haddonfield, 62 N. J. Law, 386, 792, 41 Atl. 946, the Court of Errors and Appeals said: 'As to all public rights in the street, the municipal action was clearly legislative.' " See also In re East Hopewell Township Road, 17 D. & C. (Pa.) 759, Bulen vs. Moody, 77 Ohio App. 61, 63 N.E. 2d 916, 39 C. J. S. 1038, Note 40. The rule is similar to that in connection with eminent domain proceedings to the effect that statutes prescribing condemnation proceedings need not provide that the owner be given notice and hearing on the intention or necessity of taking his property. 29 C. J. S. 1212. 2 Lewis on Eminent Domain (3rd Ed.) 1008 states: "All questions relating to the exercise of the eminent domain power which are political in their nature and rest in the exclusive control and discretion

of the legislature may be determined without notice to the owner of the property to be affected. Whether the particular work or improvement shall be made, or the particular property taken, are questions of this character, and the owner is not entitled to a hearing thereon as a matter of right." See also Zimmerman vs. Canfield, 42 Ohio St. 463, State of Missouri vs. Union Electric Light & Power Co., 42 Fed. 2d 692, 697.

The right to vacate a street or alley is, of course, subject to constitutional limitations and it is contended by counsel for the plaintiffs that if Section 29-2004 supra is applicable, it is in violation of Article 1 of Section 6 of the Wyoming Constitution providing that: "No person shall be deprived of * * * property without due process of law," and in violation of Article 1, Section 33 of our Constitution: "Private property shall not be taken or damaged for public or private use without just compensation." And it is probable that in some instances of the vacation of streets or alleys, these constitutional provisions would be applicable and that the foregoing statutory provision might in such cases without further provisions providing for the assessment of damages be held to be unconstitutional. But, of course, it depends altogether upon the fact as to whether or not property of the plaintiffs has in fact been taken or damaged. If it has not, then plaintiffs cannot raise the constitutionality of the statutory provision above mentioned. Cuthbertson vs. U. P. Coal Co., 50 Wyo. 441, 454, 62 P. 2d 311 and cases cited. In the case of Roberts vs. City of Detroit, 241 Mich. 71, 216 N.W. 410 already cited above, the court stated: "From a review of the above and other authorities, the controlling element seems to be this: If the vacating or changing is of such a character that it deprives any abutting owner of a substantial right appurtenant to his property, resort must be had to due process of law incident to the exer-

cise of eminent domain; but, if it clearly appears that the proposed change in vacating a portion of an alley is to be brought about in such a manner that it does not deprive an owner of any substantial right appurtenant to his property, such change can be made as a matter of right by the municipality because the control of the streets and alleys is vested in the municipality by the Constitution, and in this instance also by the city charter." And it is said in 29 C. J. S. 1214: "persons whose interest in the land taken is insufficient, or whose land is not sufficiently affected by the taking, are not entitled to notice." As we shall hereafter investigate and show fully, the plaintiffs in this case were not deprived of any substantial right by reason of the vacation of a portion of the alley here in question, and they are accordingly not in a position in this case to raise the constitutionality of Section 29-2004 supra. We may incidentally mention that whether or not the alley was vacated by resolution rather than ordinance makes no difference in the absence of a statute to the contrary. 62 C. J. S. 322, Section 160, Blanding vs. Las Vegas, 52 Nev. 52, 280 P. 644, 68 A. L. R. 1273, 4 McQuillin supra, page 365, Note 43.

## 2. BENEFIT TO CITY OR PRIVATE PARTY.

The second amended petition herein alleges that the city was without power or authority to vacate the alley for the sole benefit of Bunting. That is undoubtedly a correct statement of the law. Elliott, Roads and Streets (4th Ed.) Section 1183, City of Rock Hill vs. Cothran, 209 S. C. 357, 40 S.E. 2d 239, City of Stillwater vs. Lovell, 159 Okla. 214, 15 P. 2d 12, 4 McQuillin supra, Section 1520. But, of course, this statement of the law is not a statement of a fact. It is not alleged that, as a matter of fact, the property was vacated for the sole benefit of Bunting. However, let us assume that the allegation is equivalent to an allegation of fact. The

resolution vacating part of the alley does not indicate that it was solely for such benefit. On the contrary, we think that on the whole, it shows that it is for the benefit of the city. Elliott on Roads and Streets supra, Section 1182 states: "Whether it is expedient to discontinue a highway is a question for legislative decision, and when the authority to discontinue is delegated to local officers, and no restrictions are placed upon its exercise, the officers are invested with a very broad discretion, and unless this discretion has been abused the courts cannot interfere." 4 McQuillin on Municipal Corporations supra, Section 1521 states: "Apart from pure arbitrary action or clear abuse of discretion, or fraud or collusion, the propriety or necessity of vacating the given street, vested in the municipal authorities, will not be inquired into by the courts." And in Section 1520 of the same work he states: "the discretion of the municipal authorities in vacating a street or alley will not be controlled or interfered with by the courts unless there is a plain case of abuse or there has been fraud or collusion. Faithfulness to the public trust reposed in the members of the legislative body will be presumed. So the fact that some private interest may be served incidentally will not invalidate the vacation ordinance. * * * the mere fact that the vacation was granted on the petition of a private person does not invalidate the vacation proceedings. * * * the fact that the vacation was at the instigation of an individual or private corporation, who owns abutting property, to enable him or it to use the vacated portion in his business, does not of itself invalidate the vacation, nor constitute such fraud or abuse of discertion as, in the absence of any further showing, will authorize a court of equity to interfere and declare the vacating ordinance to be void. If the purpose of vacating for private use does not appear from the face of the ordinance, some authorities hold that, where fraud is not alleged,

the courts will not inquire into the motives of the common council in passing the vacation ordinance." See also 25 Am. Juris. 418. In National City vs. Dunlap, 86 Cal. App. 2d 380, 194 P. 2d 788, the court stated: "Plaintiff's third contention is that streets cannot be closed for private use. The Plaintiff city in its brief recognized the general rule that the act of the council in ordering the vacation of a street is legislative in character and the act of a legislative body is conclusive as to a finding of necessity or convenience. It is argued that the finality of such a legislative determination is subject to an exception when the finding of public convenience and necessity results from fraud or collusion between the city and private land owners. The rule and the exception are both stated in Beals v. City of Los Angeles, 23 Cal. 2d 381, 386, 144 P. 2d 839. The complaint in the present action does not allege fraud or collusion. This question was not before the court by pleading or otherwise." In Stoessel vs. Ottumwa, 227 Ia. 1021, 289 N.W. 718 the court stated: "a wide discretion is vested in cities and towns in the opening, control and vacation of streets and alleys. While the exercise of this power is not unlimited, yet where it is exercised in good faith, and for what it believes to be the public good, the courts will not interfere in the action of the municipality. Such interference is justified only in a clear case of arbitrary and unjust exercise of the power. * * * 'While the power to vacate is not arbitrary, and may to some extent be controlled by the courts, the cases are exceptional where such interference is authorized. * * * Ostensibly, the vacation and conveyance of the streets and alleys * * * were for the public good. Where no fraud is charged, the determination of such a question is within the discretion of the council, and not subject to control by the courts.' " Numerous other authorities to the same effect may be cited. There is no allegation in the second amended petition charging

fraud or abuse of discretion. Moreover, it is held in the case of People ex rel. vs. Eakin, 383 Ill. 383, 50 N.E. 2d 474 that the fact that the city is free from liability for injuries to the traveling public on a highway, and the fact that it is not compelled when vacated to maintain the street, is a sufficient public interest to warrant the vacation of the highway. We think, accordingly, that we cannot hold that the vacation of part of the alley in question here was for the sole benefit of Bunting.

## 3. QUESTION OF INJURY TO PLAINTIFFS.

To some extent we shall consider the interests of the two plaintiffs separately. The plaintiff Thomas is an abutting owner on the alley in question. Such owner has two distinct rights, one which he enjoys in common with the public generally, and certain private rights which arise out of his ownership of property contiguous to a highway. Blumenthal et al. vs. City of Cheyenne, 64 Wyo. 75, 114, 186 P. 2d 556. His rights in the highway insofar as respects the rights of passage and travel thereover, is simply equal to and in no sense greater than that of the general public. 25 Am. Juris. 433. His private rights include the right of access—the right of ingress and egress to and from his property—which is a property right—a special interest—of which he cannot be deprived without just compensation. 39 C. J. S. 1079, 1081. 25 Am. Juris. 448. In 4 McQuillin on Municipal Corporations supra, Section 1429 the author states: "The most important right of the abutter incident to his ownership of property abutting on a street or alley is his right of access, i.e., his right of ingress and egress. The easement (as it is usually called) of access is not the mere right of going out from one's home or place of business upon the street and returning therefrom to his own land, but includes a certain convenience in the use of his property with respect to the rest of the world, such as the opportunity for a man's

customers to come to his place of business without unreasonable hindrance or interruption. It includes not merely the right of the abutting owner to go into and come out of his premises but also the right to have the premises accessible to patrons, clients, and customers." Courts are not agreed as to the extent of private rights of property holders in the highways, some courts holding that even non-abutters have a right to complain of obstructions or vacation thereof, if a special injury has been sustained. Annotation 49 A. L. R. 330-375, 68 A. L. R. 1285 and subsequent pages. Most of the cases deal with abutting property holders. In some of the states it is held that if access of property is not cut off in front thereof, the fact that it is cut off in one direction only, gives no right of action and that no special injury is sustained thereby if the opposite direction is left open. 4 McQuillin supra, Section 1526. That is the situation in the case at bar insofar as the plaintiff Thomas is concerned. Thus it was said in Kachele vs. Bridgeport Hydraulic Co., 109 Conn. 151, 145 Atl. 756 quoting from another case: " 'The right which every man exercises who travels the highway for highway purposes, is a public right. It is common to all; and although the business of one man may be far more urgent than that of another * * * still the character of the injury would seem to be the same in both cases, differing only in degree * * *.' Although the plaintiff may have more occasion than others to make use of the highway, and consequently suffer more inconvenience or other injury, yet his injury does not differ in nature, but in degree only." On the other hand, many authorities hold that when a property owner is cut off from access to the highway in either direction, he sustains a special injury giving him cause to complain. 4 McQuillin supra, Section 1526. And the author considers that rule to be the more just. A late case on the subject is Bacich vs. Board of Control, 23 Cal. 2d 343, 144 P. 2d

818 which contains a majority, a concurring, and a dissenting opinion, and all of which review the subject at length, and all of which throw much light thereon. The majority held that when an access to either street next to his property (although not further) is cut off, thus creating a cul-de-sac of a street, the property owner in the block sustains a special injury of which he may complain. See Annotation, 49 A. L. R. 359. See also the late case of Wolfe vs. City of Providence (R. I.) 74 Atl. 2d 843. The same rule was applied as to an alley in Beals vs. City of Los Angeles, 23 Cal. 2d 381, 144 P. 2d 839, holding that a property owner in a block is entitled to have the alley in the block open to the streets on either side. In other words, a municipality cannot, by vacating a part of an alley, create a cul-de-sac against a lot owner without compensating him. The case of Bacich vs. Board of Control supra, is so illuminating that we shall quote to some extent from the majority opinion. It was stated in part as follows: "It has long been recognized in this state and elsewhere that an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. That right has been described as an easement of ingress and egress to and from his property or, generally, the right of access over the street to and from his property, and compensation must be given for an impairment thereof. * * * The precise origin of that property right is somewhat obscure but it may be said generally to have arisen by court decisions declaring that such right existed and recognizing it. * * * If the question is one of first impression its answer depends chiefly upon matters of policy, a factor the nature of which, although at times discussed by the courts, is usually left undisclosed. * * * Whether or not such impairment

(of access) is compensable must depend upon the character and extent of his easement of access. Does it extend to a right to pass to the next intersecting street. * * * Practically all authorities hold, and we believe correctly, that no recovery may be had where the obstruction is beyond the next intersecting street. * * * The extent of the easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted. It is obvious that in the instant case the damage suffered is greater and different than if the obstruction had been beyond the next intersecting street. * * * It would seem clear that the reasonable modes of egress and ingress would embrace access to the next intersecting street in both directions. It should be noted that the right is more extensive than the mere opportunity to go on to the street immediately in front of the property. * * * Many authorities and writers have either declared or intimated that the creation of a cul-de-sac, that is, the blocking of access to the next intersecting street in one direction is compensable, although the access still exists in the opposite direction to an intersecting street. * * * We do not fear that permitting recovery in cases of cul-de-sacs created in a municipality will seriously impede the construction of improvements, assuming the fear of such an event is real rather than fancied. The damage to the property owner is immediate and direct. The value of the use of the property is directly affected. To be able to get onto the street immediately in front of the property is of little value if that is as far as he can go. If he has access to the next intersecting street in both directions and one way is cut off, his easement, if it has any value to him at all, has certainly been impaired. We conclude, therefore, that the right of access extends in both directions to the next intersecting street."

We may, in passing, specially note the statement in the foregoing case that: "Practically all authorities hold, and we believe correctly, that no recovery may be had where the obstruction is beyond the next intersecting street." The statement is sustained by 4 McQuillin supra, Section 1527. Under this rule and the general rule stated in the foregoing case, Thomas would have the right of access to a street or alley if such ran along the west boundary of block 404 in question here. If the property of the plaintiff manufacturing company abutted such alley or street on the west, Thomas would, of course, by means thereof, have direct access thereto. If, however, such property were located in a block or part of a block further west with an alley through it like the alley through Block 404, and this alley were vacated thus cutting off the direct access to Thomas by reason thereof, he would have no right of complaint. That may seem arbitrary. But, of course, a line must be drawn somewhere. Arbitrariness, to a more or less extent, seems to be inherent in the solution of the rights of abutting property holders. Hence, if our solution in this case appears to be arbitrary to some extent, the surprise in that connection will not, perhaps, be too great.

Assuming that, as claimed by plaintiffs, the general rule announced in the California case is correct and better subserves justice, it cannot be applied in the case at bar. There is no street or alley or other passageway to the west of the alley here in question. It was always a cul-de-sac from the beginning. And in order to hold that the plaintiffs herein, or at least plaintiff Thomas, have cause to complain of the vacation of part of the alley here in question, we are compelled to go beyond the liberal rule adopted by California and other states. So we must strike out on a path of reasoning of our own, hoping that our logic will not go too far astray. It

may, in the first place, be observed that the authorities cited to us, or which we have examined, speak of access of the owner of a lot to and from his own property, and to and from streets and alleys. They do not refer to access to the private property of others, although such access must necessarily, in the ordinary case, be reached through a public highway. It is suggested that the reason, perhaps, is that lack or facility of access to the property of others on the part of anyone, is of the same kind as that on the part of all others, although the degree may be different and that, hence, that factor cannot be considered in determining whether or not an owner has been injured by a vacation of or an obstruction in a street or alley. While on the surface Thomas complains of the fact that he has no access to the western part of the alley here in question, the real reason of the complaint is that he has no direct access to the property of the manufacturing company by that means. The special injury which plaintiffs claim is by reason of the interlocking, economic interests between the plaintiffs—they want the property of Thomas to be used for warehouse and parking purposes. Let us examine the right of Thomas a little more in detail.

If a man owns property in a city block on which a street or alley abuts, he has in the ordinary case the unqualified and public right to travel along the street or alley, cross the boundary of the block and enter the public passageway on either side of the block (disregarding a situation in which one side, perchance, might be legally closed). The situation is entirely different in the case of a cul-de-sac. No one has the unqualified and public right to cross the boundary of a cul-de-sac at the end thereof, and enter the private property of another physically abutting thereon. Hence, the right of Thomas to travel the whole length of the cul-de-sac in question here to the western boundary thereof, is in

itself of no value. It can, from a practical standpoint, make no difference to him considering that right alone that it is vacated beyond the front of his own lots. It could be of no possible injury to him. The cul-de-sac would be merely shortened. Hence, the right considered, as stated, by itself may well be regarded as substantially non-existing. What might make the right to keep the whole cul-de-sac open of some value would be an extraneous factor, namely in conjunction with the right to cross the boundary into the property of the manufacturing company. That right to cross does not exist except by the consent of the company. There can scarcely be any doubt that the manufacturing company may, if it wishes, erect a fence or wall to prevent anyone from crossing the boundary at the end of the cul-de-sac. In fact, it might at times be very desirable, even almost necessary, for a manufacturing company situated similarly to construct such wall or fence. For the public to cross the boundary without consent would be trespass which the company is not, we think, compelled to tolerate. We have no doubt that if Thomas did not happen to have an interest in the manufacturing company, he —just as everybody else—would be treated as a trespasser by that company and rightfully so, if he should attempt to cross the boundary by way of the cul-de-sac. It was stated in Kachele vs. Bridgeport Hydraulic Company, cited above, that the right which every man exercises who travels a highway for highway purposes is a public right, and it is common to all. And as stated in 25 Am. Juris. 433 the right in a highway as a highway insofar as respects the right of passage and travel thereover is simply equal to and in no sense greater than that of the general public. So we find it stated in 40 C. J. S. 246 that there is "no such thing as a rightful, private, permanent use of a public highway." The public would be interested in traveling along and into the cul-de-sac at most only far enough to reach, if neces-

sary, the owner of the property at the end thereof, and not any farther. Hence, according to the rule above mentioned, the interest of Thomas is limited to that as well. To say that the manufacturing company has the right to give consent to Thomas to cross the boundary, and that hence, he has the right to travel along the whole of the cul-de-sac, would, it seems, mean that, from a practical standpoint, the cul-de-sac would be converted from a public passageway into a private one. The truth is, as already indicated, so far as Thomas is concerned, that the right to travel along the whole cul-de-sac is purely an incident to the consent given him to cross the boundary, or an incident to the interest which Thomas happens to own in the manufacturing company. It is difficult to see how the nature of such incident, in itself valueless, can be entirely changed by an extraneous factor and foreign to it. Stated differently, it is difficult to see how a public right of no value or practically nonexisting when considered by itself, can in a case like that before us, be changed into a substantial right in a constitutional sense by the consent above mentioned given by a private party.

We pass then to the rights of the manufacturing company. The case before us becomes clearer when we do so. The public would have no legal right to cross the boundary into the cul-de-sac from the side of the manufacturing company. That clearly would be trespassing unless consent were given, since private property would first have to be crossed, as may be noted by examining the map. A public right, such as here considered, cannot ordinarily be created by consent of a private party. Long usage giving rise to prescription, or filing a plat by which streets and alleys are dedicated seem to be exceptions. These factors are not involved herein. If then the manufacturing company, and the latter alone had the right to cross the boundary from its side, then

it again may well and rightly be argued that the cul-de-sac is converted from a public into a private right-of-way, which would not, we think, be permissible under the facts disclosed herein.

Counsel for defendants have cited us to cases which hold that a property owner at the end of a cul-de-sac is not an abutting owner in the legal sense, and, hence, has no right to complain of the vacation thereof. Kingshighway Supply Co. vs. Iron Works, 266 Mo. 138, 181 S.W. 30, Campbell vs. City of Glendale, (Mo. App.) 211 S.W. 2d 519, Friscoville Realty Co. vs. Police Jury, 127 La. 318, 53 So. 578. Other cases relating to the vacation of a street do not seem to agree with that reasoning. Johnson vs. Watertown, 131 Conn. 84, 38 Atl. 2d 1, Messinger vs. City of Cincinnati, 36 Ohio App. 337, 173 N.E. 260. And as already mentioned, non-abutting property holders have, in a number of cases, been held to have a cause of action when a street has been vacated. It is not, we think, necessary in this case to enter into any discussion of the rules involved in the forgoing decisions. One factor enters into this case which does not enter into the cases on the subject generally, and that is the fact that the property of the manufacturing company is outside of the limits of the city. It is true that highways in municipalities are for the use of the public at large, and not only for the use of the people living within the municipality. 3 Dillon, Municipal Corporations (5th Ed.) Section 1122. But that does not necessarily mean that the owner of property outside of the city limits has identically the same rights as property owners within the limits. For instance, it is held that every purchaser of a lot in the city, according to the dedicated plat, has the rights to have the designated scheme of public ways and places maintained in its integrity. Chichester vs. Kroman, 221 Ala. 203, 128 So. 166 and cases cited, 26 C. J. S. 145-146 under the

subject of "Dedication." That arises by reason of the purchase of lots according to the plat. But it is hardly logical to hold that the identical rights must be extended to one who has not bought any lots and whose property is outside of the limits of the city. And the question arises why an owner of property outside the limits of the city should have the right to control the lawful exercise of the powers of municipal authorities. In any event, the public right which anyone has in and over highways should be construed in conjunction and in pari materia with the power of the municipalities to vacate streets and alleys, and if that power is exercised reasonably it should control. See 39 C. J. S. 1082. In the case of House vs. City of Greensburg, 93 Ind. 533 it appears that there was in the city a street running north and south by the name of "East" street. South of the city and adjacent to it, plaintiff House owned a farm. His buildings were constructed some distance from the northern boundary of the land which also was the southern boundary of the city, but he constructed a roadway running north to connect with East street of the city, also running north. The city proposed to vacate a portion of East Street for some distance north from the boundary line between the city and plaintiff's land thus shutting off plaintiff's access. The question arose as to whether or not the plaintiff had any interest in the vacation of the street in the city. The court said in part: "Can a non-resident land-owner, whose land is outside of, but abuts upon, the corporation line of an incorporated city, be heard to complain of the action of the common council of such city in the vacation of a street or part of a street, within the city limits, upon the terminus of which such land also abuts? We are of opinion that this question must be answered in the negative. * * * The appellant shows in his complaint, and it is shown, also, by the report of the city commissioners, that he is not such a property owner, as,

under the statute, is authorized to object to the proposed vacation of East street. It is clear, therefore, as it seems to us, that the appellant has no standing in court to complain of the action of the appellee in the vacation of East street, however much it may affect his private interests, and however much inconvenience may result to him therefrom. He is a stranger to the municipality, and, for this reason, has no direct or substantial interest in any of its public streets, within the meaning of the city charter." In the case of Messinger vs. City of Cincinnati cited supra, the plaintiffs proposed to establish a subdivision to the City of Cincinnati on the east. The planning commission of the city had authority within three miles of the outside limits of the city to require the co-ordination of the streets in the subdivisions with the streets in the city, and that was done in the case at bar. But the city authorities proposed to vacate part of a street which connected with the subdivision. The court discusses the subject in part as follows: "The next proposition is the question of the capacity of the plaintiffs to maintain this action, since their property lies wholly outside the corporate limits of the city of Cincinnati. This question is not without difficulty. At first blush, it would seem that a nonresident of the city would have no capacity to interfere in the control of council over the streets, which control is given it by the statutes. However, we are confronted with section 3586-1, General Code, giving the planning commission, an administrative body of the city, jurisdiction over subdivisions outside the city limits. * * * We, therefore, have the situation of the planning commission requiring the plaintiffs to plat their subdivision and requiring the coordination of the streets of the subdivision with existing streets, which in this case would be the extension of Teakwood avenue, co-ordinating with the existing Teakwood avenue. The city, through one of its administrative bodies, required

plaintiffs to conform to Teakwood avenue, and provide for its extension, while another body of the city seeks to prevent and to take away all rights thereunder by cutting the street at the corporation line. This action appears to this court to be inequitable and unfair to plaintiffs. They acquired equitable rights by reason of the action of the planning commission, in so far as it affects their subdivision and the ingress and egress thereto." It would seem, accordingly, that apparently the Ohio court would have agreed with the Indiana court in the case above mentioned, had it not been for the fact that by reason of the action of the planning commission, plaintiffs acquired an equitable interest.

The rule of the Indiana case above mentioned seems, perhaps, somewhat harsh. But it would not be harsh as applied to the alley here in question, in view of the limited use to which alleys are ordinarily devoted. We think that the power to vacate the alley in this case was exercised reasonably. We do not, however, think, speaking incidentally, that the rule of the Indiana case should be extended to a highway which, as it is commonly called a "through" highway, connecting a municipality with the outside world. Thus it is said in Brown vs. Rea, 150 Cal. 171, 88 P. 713, 714: "Every owner of land abutting upon a highway has a right of access from his land to the highway and from the highway to his land. This right of access is an easement, and an obstruction to the highway which at the same time obstructs this easement is a peculiar injury to the abutting landowner and gives him a cause of action." The Lincoln Highway is a "through" highway and we do not doubt that the manufacturing company plaintiff has the right of continued access to it. But there is no special reason why such right should extend to the alley here in question which was laid out primarily for the

benefit of the parties in the block when it was dedicated as a part of the City of Cheyenne.

If our foregoing reasoning is faulty, still we think that we should arrive at the same result when considering the case before us from a somewhat different standpoint. We have not heretofore greatly differentiated between a street and an alley and have, to a large extent, treated an alley as though it were a highway, the same as a street. But, of course, everyone knows that that is true only in a limited sense. In Flynn vs. City of Worthington, 177 Minn. 28, 224 N.W. 254 the court stated: "Alleys differ from streets. They are not intended to convenience the public in the way that streets do. They are more of local convenience to the *parts of the block which they abut.* * * * They are not thought of as a street connecting with other streets and supplying the municipality with a system of connecting highways. An alley is not intended for such purpose. While the public travels it, its use is local to abutting property." (Italics supplied.) In Bagley vs. People, 43 Mich. 355, 5 N.W. 415, 38 Am. Rep. 192 the court stated: "An alley can, in no proper or legal sense, be considered as a public highway, or governed by rules relating thereto. While the city may, and undoubtedly has, certain limited rights therein for municipal purposes, yet the public have no general right of way over or through the same. It is designed more especially for the use and accommodation of the owners of property abutting thereon, and to give the public the same unqualified rights therein that they have in and to the use of the public streets would defeat the very end and object intended." Similar in effect see Talbert vs. Mason, 136 Iowa 373, 113 N.W. 918, 14 L. R. A. N.S. 878, Athey vs. Tennessee Coal, Iron & R. Co., 191 Ala. 646, 68 So. 154, Phipps vs. City and County of Denver, 57 Colo. 205, 140 P. 797, Paul vs. City of Detroit, 32

Mich. 108, 111, Beecher vs. People, 38 Mich. 289, 291.

What has been said is, of course, much more true in the case of an alley which is a cul-de-sac, and particularly one the end of which is at the city's limits, and which could not be said to have been created for the benefit of property outside of these limits. The cul-de-sac is not designed or intended for travel or traffic beyond the end thereof. The party, at its beginning or opening, is not in the ordinary case interested in its being open beyond him, except perhaps insofar as the public in general is interested in reaching the property of the party further on inside of the cul-de-sac. We hardly think we should be asked to hold that this case should be considered as an exception merely because the end of a cul-de-sac happens not to be fenced or closed by a wall or building at its end, and because plaintiff Thomas happens accidentally to be interested in the plaintiff manufacturing company. The ordinary mode of travel and traffic in the case of the existence of a cul-de-sac as in the case at bar is by the existing streets. Any other mode of travel and traffic would be extraordinary and we hardly think that we are warranted in saying that plaintiffs are entitled to that extraordinary mode. It is stated in Con Realty Co. vs. Ellenstein, 125 N. J. L. 196, 14 Atl. 2d 544, 546: "The vacation of a street is not ordinarily deemed violative of private rights. It is in substance but the surrender or extinction of the public easement; and the consequential loss, if any, to the abutting landowners is not chargeable to the municipality. Except where there is statutory provision therefor, the law does not render compensation for losses resulting from a valid surrender of public rights." That must be much more true in the case of an alley and particularly one where that alley is a cul-de-sac. Looking at the map it will be noted that the Lincoln Highway is only one-third of a block

away from the alley at Stinsen Avenue—say about 75 feet—hardly a distance that could be called a burden on plaintiffs. If that highway is as dangerous as plaintiffs seem to think, it is a danger shared in common with the public generally.

We think that the judgment of the trial court should be affirmed and it is so ordered.

*Affirmed.*

KIMBALL, C. J., and RINER, J., concur.